Filed 4/4/13  P. v. Frausto CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061739 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD236566) |
| JUAN FRAUSTO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kerry Wells, Judge.  Affirmed in part, reversed in part and remanded.

A jury convicted Juan Frausto of assault by means likely to produce great bodily injury.  (Pen. Code, § 245, subd. (a).)[1]  The court suspended imposition of sentence and placed Frausto on probation for three years with terms and conditions, including that he could not knowingly "be within two blocks of any proscribed area (an area of gang or criminal activity)."  On appeal, Frausto contends the court erred by imposing a vague and

---

1  Statutory references are to the Penal Code unless otherwise specified.

overbroad probation condition. Frausto also contends the statutory construction of section 4019 and principles of equal protection demand he be given additional presentence custody credits. We conclude the imposed probation condition should be modified to avoid unconstitutional vagueness and overbreadth. We also conclude that under the rules of statutory construction the enhanced conduct credit provision of section 4019 applies only to defendants who committed their crimes on or after October 1, 2011, and section 4019 does not violate principles of equal protection. (U.S. Const. 14th Amend.; Cal. Const., art. I, § 7, subd. (a).)

## FACTUAL AND PROCEDURAL BACKGROUND

On September 15, 2011, Frausto and several other individuals identified as members of the Eastside gang assaulted Guillermo Lazzaro outside his San Diego residence. During the melee, Lazzaro was struck with a scooter and fell to the ground. The gang members also threw pieces of wood and a brick at Lazzaro and his friends.

San Diego Police arrived and detained Frausto and several others. After a curbside line-up, during which he was identified as one of the individuals who threw punches during the assault, Frausto was arrested. Police later found his fingerprints on a piece of wood at the crime scene.

Frausto was in county jail awaiting trial on October 1, 2011, when the 2011 amendments to section 4019 became operative.[2] (Stats. 2011-2012, 1st Ex. Sess., ch. 12,

---

[2] Section 4019 was amended in 2011 in conjunction with the 2011 Realignment Legislation, which addressed public safety. (Stats. 2011, ch. 15, § 1; see § 1170, subd. (h).)

§ 35.) On February 10, 2012, the jury convicted Frausto of assault by means likely to produce great bodily injury. The court suspended imposition of sentence and placed Frausto on probation for three years with terms and conditions, including the condition that he serve 285 days in county jail. The court awarded Frausto a total of 285 days of presentence custody credit consisting of 191 days for actual days served (§ 2900.5, subd. (a)), plus 94 days of conduct credits under section 4019, subdivision (c). The order for probation contained condition number 12.h., which provided: "Do not knowingly be within two blocks of any proscribed area (an area of gang or criminal activity). 'Gang' means any 'criminal street gang' as defined by Pen. Code 186.22(e) and (f)."

DISCUSSION

A. Forfeiture

The People do not address Frausto's claim that a probationer may challenge a probation condition for the first time on appeal. "Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal." (*In re Sheena K.* (2007) 40 Cal.4th 875, 880 (*Sheena K.*).) Generally, the forfeiture rule also applies in the context of sentencing; where a trial court fails to make or articulate a discretionary sentencing choice, the defendant must object to preserve the issue on appeal. (*Id.* at p. 881; *People v. Scott* (1994) 9 Cal.4th 331, 351-354; *People v. Tillman* (2000) 22 Cal.4th 300, 302-303.)

However, although claims involving a discretionary sentencing choice or unreasonable probation condition require analysis of facts and circumstances specific to

3

the individual case, constitutional challenges to probation conditions require only "the review of abstract and generalized legal concepts--a task that is well suited to the role of an appellate court. Consideration and possible modification of a challenged condition of probation, undertaken by the appellate court, may save the time and government resources that otherwise would be expended in attempting to enforce a condition that is invalid as a matter of law." (*Sheena K., supra,* 40 Cal.4th at p. 885.) Whenever a "facial challenge is made to the constitutionality of a probation condition, there is no need to preserve the claim by an objection in the [trial] court." (*In re R.P.* (2009) 176 Cal.App.4th 562, 566; see *Sheena K.,* at p. 889). Frausto did not forfeit his challenge to the constitutionality of his probation condition even though he did not object at the time the court imposed the condition.

Frausto did, however, forfeit his appellate claim of entitlement to additional conduct credits. At sentencing, immediately after awarding him 94 conduct credits, the court asked both parties if there was anything it had "missed." Frausto's counsel did not object to the conduct credit award at that time. By not objecting to the award of conduct credits, Frausto forfeited the right to challenge on appeal any error in the court's award amount. (*People v. Myers* (1999) 69 Cal.App.4th 305, 312 [defendant forfeited any claim of error in presentence credits by stipulating to amount awarded].) Nevertheless, to avert a claim of ineffective assistance of counsel, we address the merits of his statutory construction and equal protection arguments concerning the award of conduct credits. (See, e.g., *People v. Norman* (2003) 109 Cal.App.4th 221, 230 [court examined sentence to determine if cruel and unusual despite defendant's waiver of argument].)

4

B. <u>Standard of Review</u>

"[W]hen a facial challenge is made to the constitutionality of a probation condition," "fairness and efficiency considerations weigh in favor of an appellate court's de novo review of a facial constitutional challenge." (*In re R.P., supra,* 176 Cal.App.4th at p. 566.) Likewise, because Frausto's claim to additional conduct credits involves issues of statutory interpretation and constitutionality-- pure questions of law--we apply a de novo standard of review, and exercise our independent judgment without deference to the trial court's ruling. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799-801.)

C. <u>The Constitutionality of Probation Conditions Imposed by the Trial Court</u>

Frausto challenges the constitutionality of the probation condition prohibiting him from knowingly being within two blocks of any area of gang or criminal activity. He claims the condition is both vague and overbroad, and therefore should be modified to require notice by the probation officer of *specific* prohibited locations.

"Probation is generally reserved for convicted criminals whose conditional release into society poses minimal risk to public safety and promotes rehabilitation. [Citations.] The primary goal of probation is to ensure '[t]he safety of the public . . . through the enforcement of court-ordered conditions of probation.' " (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120; §§ 1203.1, 1202.7; *People v. Welch* (1993) 5 Cal.4th 228, 233.) Under section 1203.1, subdivision (j), the Legislature has granted a trial court the authority to impose reasonable conditions of probation "as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and

5

generally and specifically for the reformation and rehabilitation of the probationer . . . ." (§ 1203.1, subd. (j).) Under that section, a trial court has broad discretion to determine whether an eligible defendant is suitable for probation and may impose reasonable conditions to foster rehabilitation of the probationer, protect public safety and make amends to society and to the victim of the probationer's crime. (*People v. Leon* (2010) 181 Cal.App 4th 943, 948; *People v. Smith* (2007) 152 Cal.App.4th 1245, 1249-1250; *Welch,* at p. 233.)

The court's broad discretion to impose probation conditions is not without limits. "[T]he authority is wholly statutory; the statute furnishes and limits the measure of authority . . . the court may thus exercise [citations]." (*In re White* (1979) 97 Cal.App.3d 141, 146 (*White*).) Where constitutional rights are restricted, the judicial discretion to set conditions of probation are "circumscribed by constitutional safeguards. Human liberty is involved. A probationer has the right to enjoy a significant degree of privacy, or liberty, under the Fourth, Fifth and Fourteenth Amendments to the federal Constitution [citations]." (*Id.* at p. 146.) Probation conditions that limit constitutional rights are valid "only if narrowly drawn to serve the important interests of public safety and rehabilitation, *and* if they are 'specifically tailored to the individual probationer.' " (*People v. Smith, supra,* 152 Cal.App.4th at p. 1250.)

We first note the probation condition imposed on Frausto restricts his constitutional right to intrastate travel. (*People v. Smith, supra,* 152 Cal.App.4th at p. 1250; *White, supra,* 97 Cal.App.3d at p. 148.) "[T]he right to intrastate travel (which includes intramunicipal travel) is a basic human right protected by the United States and

6

California Constitutions as a whole. Such a right is implicit in the concept of a democratic society and is one of the attributes of personal liberty under common law." (*White*, at p. 148.) Moreover, the right to travel underpins many other fundamental rights, including the right to free speech, free assembly and free association. (*Id.* at p. 149.) "It is simply elementary in a free society. Freedom of movement is basic in our scheme of values." (*Ibid.; Kent v. Dulles* (1958) 357 U.S. 116, 126.)

Given the possible impingement of so many fundamental rights, a restriction regarding travel "should be regarded with skepticism. If available alternative means exist . . . less violative of the constitutional right and . . . narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used [citations]." (*White, supra*, 97 Cal.App.3d at p. 150.) Consequently, probation conditions placing restrictions on travel have frequently been held vague or overbroad. (E.g., *In re Victor L.* (2010) 182 Cal.App.4th 902, 913-919 [holding condition of prohibiting entry in areas known for gang-related activity overbroad and vague] (*Victor L.*); *White,* at pp. 147-152 [remanding for modification of probation condition prohibiting prostitute from entering into specific high-prostitution areas of Fresno, because it interfered with her constitutional right to intrastate travel]; *People v. Beach* (1983) 147 Cal.App.3d 612, 619-623 [probation condition requiring elderly widow convicted of involuntary manslaughter to relocate was held to be overbroad and in violation of her constitutional rights]; but see *U.S. v. Watson* (9th Cir. 2009) 582 F.3d 974, 977, 983-985 [upholding probation condition prohibiting parolee who previously lived in San Francisco from entering the City and County of San Francisco].)

7

1. *Vagueness of the Imposed Probation Conditions*

" ' "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.  All are entitled to be informed as to what the State commands or forbids." [Citations.]  The operative corollary is that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." ' " (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630; *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090.)  "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*Sheena K., supra,* 40 Cal.4th at p. 890.)  The rule of fair warning consists of the due process principles of preventing arbitrary or discriminatory application by policemen, judges and juries as well as providing adequate notice to those who must observe its strictures.  (*Ibid*.; *In re H.C.* (2009) 175 Cal.App.4th 1067, 1070.)  "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness.  [Citation.]  A probation condition that imposes limitations on a person's constitutional right must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Sheena K.,* at p. 890.)

Probation conditions should be given the meaning that would appear reasonable to an objective reader.  (*People v. Bravo* (1987) 43 Cal.3d 600, 606.)  Frausto asserts that absent a directive requiring the probation officer to provide notice of prohibited specific

8

locations, the probation condition is impossibly vague to an objective reader. The People respond that the plain meaning of the probation condition *implies* the probation officer will notify Frausto of the prohibited areas. Certainly as both parties agree, a court may " 'leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation.' " (*Victor L., supra,* 182 Cal.App.4th at p. 919.) The court's discretionary power to delegate specific terms of implementation to the probation officer derives from section 1202.8, subdivision (a), which provides: "[p]ersons placed on probation by a court shall be under the supervision of the county probation officer who shall determine both the level and type of supervision consistent with the court-ordered conditions of probation."

However, the People go too far when stating that because of the implied meaning of the probation condition, logically the probation officer *must* communicate the proscribed areas to Frausto before he can violate the condition. Nothing in the probation order states the probation officer *must* specify to Frausto the specific areas he should know to be areas of gang or criminal activity. Instead, the plain meaning of the probation condition requires only that Frausto knowingly be within two blocks of an area of gang activity but does not specify from where the source of that knowledge must issue. Presumably, Frausto, as a gang member, has ample personal knowledge of numerous areas of local gang activity. However, an arrest under these conditions would lead to an arbitrary and subjective evaluation as to whether he had sufficient personal knowledge to violate the condition of his probation. However, an "appellant's waiver of his . . . rights must be interpreted on the basis of an objective test." (*People v. Bravo, supra,* 43 Cal.3d

9

at p. 606.)  To avoid an improper subjective analysis of Frausto's personal knowledge as to whether a specific location constituted an area of gang activity, he should be forewarned, as a condition of his probation, which areas are specifically proscribed to him.  But, "[t]o require the judge in each probation order to specify exactly which areas are forbidden to the individual gang member would impose an undue burden on the judiciary. . . . [T]he probation officer is in a better position to identify the forbidden areas . . . ."  (*Victor L., supra,* 182 Cal.App.4th at p. 917.)  For that reason, we elect to modify the probation condition to *require* the probation officer to identify the forbidden areas, and notify both Frausto and the trial court as to the areas he must avoid.

2.  *Breadth of the Imposed Probation Conditions*

The overbreadth doctrine merely requires the imposed probation conditions that impinge on constitutional rights be carefully tailored and reasonably related to the compelling state interest in reformation and rehabilitation.  (*Victor L., supra,* 182 Cal.App.4th at p. 910; *Sheena K., supra,* 40 Cal.4th at p. 890.)  "Probation by its very nature is intended to be tailored to the needs of society and the individual defendant.  Unlike the purpose of imprisonment which is punishment, the purpose of probation is rehabilitation.  The manifest goals of probation and the need for individualistic treatment compels the imposition of special probation conditions framed to meet the particular needs of each individual case.  Particularized conditions of probation should be directed toward rehabilitation rather than reliance upon some general condition which utilizes a mechanized mass treatment approach."  (*White*, *supra*, 97 Cal.App.3d at pp. 150-151.)

10

However, condition 12.h, about which Frausto complains, is contained within a mechanized form used for all probationers. Without further clarification, condition 12.h is impermissibly broad in scope. In some instances, an area with "gang activity" might be an entire district or town. (*In re H.C., supra,* 175 Cal.App.4th at p. 1072.) Presumably, "[c]ity buses, the Greyhound bus and taxicabs pass through [these] areas. Technically, being engaged in a passive activity such as being a mere passenger in public transportation or private transportation would be a violation of the condition." (*White, supra*, 97 Cal.App.3d at p. 147.) Moreover, the record is silent as to whether Frausto lives, works, or attends school in an area of "gang activity." A blanket travel restriction may be proper for some probationers, and the same restriction "may be overbroad for one who lives, works or goes to school within the area." (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1373.) The condition as written would afford the probation officer significant discretionary power--" 'that is, the power to banish him. It has frequently been held that a sentencing court does not have this power.' " (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358.) "Indeed, the 'gang-related activity' restriction appears to have been intentionally designed to banish . . . gang members from a broad category of locations, not simply areas where gang members 'meet' or 'get together,' which are the focus of a separate proscription. Gang membership and 'participat[ion] in any gang activity' are also separately forbidden. A separate clause also prohibits both one-to-one and group association with gang members. [Citation.] Therefore, the 'gang-related activity' condition appears to have been intended to prevent . . . close contact with gang members, even short of voluntary association or participation in their activities. Since

11

another condition commands [the defendant] to obey all laws, this condition also bans his presence in gang-related locations, even though his conduct there would otherwise be lawful." (*Victor L.*, *supra*, 182 Cal.App.4th at p. 915.)

Generally, "a court may dictate the basic policy of a condition of probation, leaving specification of details to the probation officer." (*Victor L., supra,* 182 Cal.App.4th at p. 919.)  "However, the court's order cannot be entirely open-ended.  It is for the court to determine the nature of the prohibition placed on a defendant as a condition of probation . . . ." (*People v. O'Neil, supra,* 165 Cal.App.4th at p. 1359.) However, where the probation condition contains "no such standard by which the probation department is to be guided, the condition is too broad and must either be stricken or rewritten to provide the necessary specificity." (*Ibid.*)  Although the court may have expected the probation officer to designate the "specific" proscribed locations of gang or criminal activity, the court's probation order should not be left to implication. As Frausto suggests, probation condition 12.h should be modified to replace "area" with "specific location" and the condition should be further modified to *require* the probation officer to provide Frausto and the court with a list of specifically proscribed locations. Only by providing Frausto and the court with specific locations can the scope of the imposed condition be adequately determined.  If Frausto then disagrees with the breadth of the probation officer's list, he can move in the trial court to modify the condition of probation.

D.  Claim to Additional Conduct Credits

Frausto claims that despite committing his offenses before the October 1, 2011, operative date of the amendment to section 4019, he is entitled to additional presentence conduct credits at the enhanced rate of the new version of section 4019.  Under section 4019, defendants are entitled to earn additional credit toward their sentences by performing additional labor (§ 4019, subd. (b)) and for good behavior (§ 4019 subd. (c)).  To differentiate from credits earned by actual time spent in custody, these additional credits are referred to as conduct credits.  (*People v. Duff* (2010) 50 Cal.4th 787, 793.)  Before October 1, 2011, persons who, like Frausto, had been convicted of a serious or violent felony were entitled to only two days of conduct credits for every four days actually served.  (Former Pen. Code, § 4019, subd. (f); Stats. 2010, ch. 426, § 2.)  However, on October 1, 2011, when Frausto was in local custody awaiting sentencing, the Legislature amended section 4019 in Assembly Bill No. 109 (2011-2012 Reg. Sess.), as part of the Realignment Act.  The amendment, which became operative October 1, 2011, increased the amount of conduct credits earned by prisoners in local custody to one day of conduct credit for each day spent in actual custody.  (§ 4019, subd. (f); Stats. 2011, ch. 39, § 53.)  As relevant here, section 4019, subdivision (h), provides:

> "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

Frausto committed his offense on September 15, 2011. At sentencing, the court applied the former version of section 4019 in effect at the time Frausto *committed* his crime. Frausto contends any applicable conduct credits he accrued after the operative date of the amendment to section 4019 on October 1, 2011, should have been calculated using the more generous amended rate. He asserts the award of only 94 days of conduct credits violated both the terms of section 4019 as amended and his right to equal protection.

1. *Statutory Construction*

Frausto asserts that under the rules of statutory construction, section 4019 as amended requires the court to grant one-for-one conduct credits for all time spent in local custody after October 1, 2011. He contends the second sentence of section 4019, subdivision (h), suggests that days earned by a prisoner after October 1, 2011, must be calculated at the rate established by the new law.

The language in section 4019, subdivision (h), that "[a]ny days earned . . . prior to October 1, 2011, shall be calculated at the rate required by the prior" law could be read to mean that any days earned by a defendant after that date should be calculated using the amended rate, regardless of the date the offense was committed. (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 52.) However, to do so would invalidate the immediately preceding sentence of section 4019, which *explicitly* limits the benefits of the new accrual rate to those defendants who committed their crimes after October 1, 2011. (*Rajanayagam,* at p. 52.) Frausto's proffered interpretation would "defy the Legislature's clear intent in subdivision (h)'s first sentence and contradict well settled principles of statutory construction." (*Ibid.*) Interpretations that lead to absurd results or

14

consequences the Legislature could not have intended must be avoided. (*People v. Thomas* (1992) 4 Cal.4th 206; see *People v. Tanner* (1979) 24 Cal.3d 514.)

For that same reason, Frausto cannot avail himself of the rule of lenity, which "generally requires that 'ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation.' " (*In re M.M.* (2012) 54 Cal.4th 530, 545.) However, the rule of lenity only applies "if two reasonable interpretations of the statute stand in relative equipoise." (*People v. Anderson* (2002) 28 Cal.4th 767, 780.) Frausto's interpretation, however, would lead to a nonsensical interpretation and "ambiguities are not interpreted in the defendant's favor if such an interpretation would provide an absurd result, or a result inconsistent with apparent legislative intent." (*People v. Cruz* (1996) 13 Cal.4th 764, 783; see also *In re Michael D.* (2002) 100 Cal.App.4th 115, 125.)

Moreover, absent a clearly manifested intent to the contrary, there is a legal presumption that all statutes operate prospectively. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208-1209.) Statutes ambiguous with respect to retroactive application are to be construed as unambiguously prospective. (*Ibid.*; *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*); see also *Lindh v. Murphy* (1997) 521 U.S. 320, 328, fn. 4 [statute applied retroactively only where statutory language is "so clear that it could sustain only one interpretation"].) One noted exception to the presumption of prospective application exists where the Legislature reduces the *punishment* for a particular offense. (*In re Estrada* (1965) 63 Cal.2d 740, 748.) However, because section 4019 addresses future conduct, but does not alter the penalty for any particular crime, that exception is

15

not applicable here.  (*People v. Ellis* (2012) 207 Cal.App.4th 1546, 1551; see also *Brown, supra,* 54 Cal.4th at p. 325).

Although section 4019 could have been drafted more artfully, "the Legislature's clear intent was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011.  [Citation.]  The second sentence does not extend the enhanced rate to any other group, but merely specifies the rate at which all others are to earn conduct credits."  (*People v. Ellis, supra,* 207 Cal.App.4th at p. 1553; see also *People v. Rajanayagam, supra,* 211 Cal.App.4th at p. 52 [§ 4019, subd. (h) merely reaffirms that defendants who committed their crimes before October 11, 2011, can still earn conduct credits, just under the prior law].)  The Legislature's clear and explicit intent to apply the new custody credit formula only prospectively cannot be overridden by an implied interpretation of the second sentence in the statute.  Frausto's argument that statutory construction requires modification of his conduct credit award has no merit.

### 2. *Equal Protection*

Frausto also invokes the basic guarantees of equal protection embodied in the Fourteenth Amendment to the United States Constitution and article I, section 11 of the California Constitution to support his contention.  (*Hayes v. Superior Court* (1971) 6 Cal.3d 216, 223; *In re King* (1970) 3 Cal.3d 226, 232.)  Frausto asserts that, were section 4019 interpreted to apply only to crimes committed on or after October 1, 2011, it would violate equal protection principles.

16

To succeed on a claim under the equal protection clause, Frausto must first show the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199; see also *People v. Wilkinson* (2004) 33 Cal.4th 821, 836-837 (*Wilkinson*); *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571.) For purposes of section 4019 there are two classes of incarcerated inmates: (1) those in jail on or after October 1, 2011, having committed a crime on or after October 1, 2011; and (2) those in jail on or after October 1, having *committed the same offense before* October 1, 2011.

The primary purpose of awarding conduct credits is to reward those defendants who perform additional work and behave, and to act as a threat to withhold conduct credits from those who would otherwise misbehave. Indeed, the "very purpose of conduct credits is to foster constructive behavior in prison by reducing punishment." (*People v. Lara* (2012) 54 Cal.4th 896, 906.)

Frausto contends that because inmates from both groups have committed the same crime, are in custody at the same time, and are earning conduct credits for the same positive behavior, they are similarly, if not identically, situated. However, as the Supreme Court noted, "prisoners who served time before the incentives took effect . . . could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows." (*Brown, supra*, 54 Cal.4th at pp. 328-329 [examining applicability of retroactivity to § 4019]; see also *People v. Kennedy* (2012) 209 Cal.App.4th 385, 396-

397.) Although *Brown* examined whether section 4019 should be applied retroactively to all prisoners, the logic is nonetheless applicable here.

Additionally, even were we to hold that both groups have a similar incentive to work and behave, we do not believe both groups have the same inducement. Although the type of incentive--additional conduct credits--may be the same as between the groups, the amount of that incentive is not the same. Those prisoners who commit crimes and serve time after the incentives take effect have a greater incentive to alter their behavior than those who committed crimes before the later-enacted incentive. Thus, contrary to Frausto's claims, the two groups are not similarly situated and, as a result, any analysis of his equal protection claims does not proceed to the next step of the level of review.

Although we need not decide the appropriate level of review, we believe rational basis review is the proper level of scrutiny. In considering whether state legislation violates equal protection, " 'we apply different levels of scrutiny to different types of classifications. At a minimum, a statutory classification [affecting similarly situated individuals] must be rationally related to a legitimate governmental purpose. [Citations.] Classifications . . . affecting fundamental rights . . . are given the most exacting scrutiny.' " (*Wilkinson, supra,* 33 Cal.4th at p. 836; see also *Manduley v. Superior Court, supra,* 27 Cal.4th at p. 571.) When a statutory classification infringes on either a fundamental interest or right, the law or policy must be justified by a compelling interest and the distinctions drawn by the law must be necessary to further this interest. (*People v. Olivas* (1976) 17 Cal.3d 236, 251.) In all other instances, rational basis review is the default level of review; the state is only required to make a showing that "the legislative

18

classification bears a rational relation to some independent and legitimate legislative end." (*Romer v. Evans* (1996) 517 U.S. 620, 621.)

Contrary to Frausto's argument, there is no fundamental interest at stake with regard to conduct credits. The argument could be made that to limit a prisoner's opportunity to earn conduct credits is to increase punishment, because it "substantially alters the consequences attached to a crime already completed, and therefore changes 'the quantum of punishment.' " (*Weaver v. Graham* (1981) 450 U.S. 24, 33). After all, "a person who is released a day early is punished a day less." (*People v. Lara, supra,* 54 Cal.4th at pp. 905-906.) As Frausto notes, courts have in the past reached different conclusions as to the applicable test for incongruities resulting from statutes involving time credits. (See, e.g., *People v. Austin* (1981) 30 Cal.3d 155, 166 [compelling interest]; *People v. Sage* (1980) 26 Cal.3d 498, 508 [same]; *People v. Caruso* (1984) 161 Cal.App.3d 13, 17-18 [same]; *People v. Jacobs* (1984) 157 Cal.App.3d 797, 801 [same]; *In re Kapperman* (1974) 11 Cal.3d 542, 544-546 [rational relationship]; *People v. Silva* (1994) 27 Cal.App.4th 1160, 1168 [same]; *People v. King* (1992) 3 Cal.App.4th 882, 885 [same].) However, those cases holding there is a compelling interest no longer stand for the proposition Frausto claims. As our Supreme Court held, the cases they relied on should not be so broadly read as to require strict scrutiny "whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes." (*Wilkinson, supra,* 33 Cal.4th at p. 837.) Since those cases were decided, the Supreme Court has favorably cited *In re Bender* (1983) 149 Cal.App.3d 380 for the proposition that " 'punishment-lessening statutes given prospective application do

19

not violate equal protection.' " (*People v. Floyd* (2003) 31 Cal.4th 179, 189, quoting *Bender,* at p. 388.)

Personal liberty is not at stake in cases of conduct credits as "section 4019 does not alter the penalty for any crime; a prisoner who earns no conduct credits serves the full sentence originally imposed. Instead of addressing punishment for past criminal conduct, the statute addresses *future conduct* in a custodial setting by providing increased incentives for good behavior." (*Brown, supra,* 54 Cal.4th at p. 325.) The proper test for issues concerning conduct credits is rational basis review.

Assuming the state adopted a classification that affected two or more similarly situated groups in an unequal manner, the next step would be to determine whether those classifications bear a rational relationship to a legitimate state purpose. The rational relationship test is highly deferential. (*People v. Turnage* (2012) 55 Cal.4th 62, 77 ["[a] classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends' "].) Under the rational relationship test, a statutory classification is constitutionally sound if there are any reasonably conceivable facts that could provide a rational basis for the classification. (*People v. Hofsheier, supra,* 37 Cal.4th at p. 1200.)

Frausto asserts that because the purpose of both the Realignment Act and the amendment to section 4019 was to address the state's fiscal emergency by more cost-effectively managing prison populations, the arbitrary date of October 1, 2011, has no legitimate or rational public purpose. However, all changes, additions or deletions to the code must have a beginning date. Equal protection of the law "does not forbid statutes

and statutory changes to have a beginning, and thus to discriminate between rights of an earlier and later time."  (*Sperry & Hutchinson Co. v. Rhodes* (1911) 220 U.S. 502, 505; see also *People v. Floyd, supra,* 31 Cal.4th at p. 188 ["[d]efendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the [operative] date of a statute lessening the punishment for a particular offense"].)

The stated goal of the Legislature is achieved by the amendment, as the fiscal crisis is ameliorated to a degree by awarding additional conduct credits to those prisoners who committed their crimes on or after October 1, 2011.  Although awarding enhanced credits retroactively would have produced greater cost savings, the Legislature did not choose this approach.  Nonetheless, the approach the Legislature did choose bears a rational relationship to cost savings.

> "[T]he Legislature could rationally have believed that by making the 2011 amendment to section 4019 have application determined by the date of the offense, they were preserving the deterrent effect of the criminal law as to those crimes committed before that date. To reward appellant with the enhanced credits of the 2011 amendment to section 4019, even for time he spent in custody after October 1, 2011, weakens the deterrent effect of the law as it stood when appellant committed his crimes. We see nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards (conduct credits) in effect at the time an offense was committed." (*People v. Kennedy, supra,* 209 Cal.App.4th at p. 399.)

Although the amendment to section 4019 may result in the two classifications obtaining different conduct credit totals, under the rational relationship test the Legislature is permitted to "experiment individually with various therapeutic programs related to

criminal charges or convictions" (*In re Huffman* (1986) 42 Cal.3d 552, 561), so as "to control the risk of new legislation by limiting its application" (*People v. Lynch* (2012) 209 Cal.App.4th 353, 361) and determine what works and what does not. (*Warden v. State Bar* (1999) 21 Cal.4th 628, 649 [reform measures can be implemented one step at a time].) Because the deferential nature of the rational basis test does not afford us the power to second guess the Legislature and determine the most effective manner to achieve that legitimate state interest, we hold the classifications established in section 4019 bear a rational relationship to a legitimate state interest.

DISPOSITION

The judgment is affirmed in part, reversed in part and remanded. Accordingly, we order that the gang-area condition (condition 12h) be modified to read as follows: "Do not knowingly visit or remain in any specific location the probation officer informs you and the court is an area of criminal-street-gang-related activity."

McDONALD, J.

WE CONCUR:

McCONNELL, P. J.

BENKE, J.

22