[No. G006077. Fourth Dist., Div. Three. Apr. 26, 1989.]

In re PEDRO Q., a Person Coming Under the Juvenile Law.
THE PEOPLE, Plaintiff and Respondent, v.
PEDRO Q., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976(b), parts III through V of this opinion are not published, as they do not meet the standards for publication.

**COUNSEL**

Daniel A. Dobrin, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Robert M. Foster and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

Kent S. Scheidegger and Charles L. Hobson as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.**—Pedro Q. appeals his California Youth Authority (CYA) commitment. In the published portion of this opinion, we consider his contentions that probation conditions restricting his travel were improperly imposed by the probation officer and were, in any event, unconstitutional.

## I

In March 1986 Pedro was placed on juvenile probation for assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).) The following terms were imposed: (1) commitment to Los Pinos Conservation Camp for nine months; (2) no association with members of "F-Troop," a Santa Ana gang to which the minor belonged; (3) participation in a program of therapy and counseling as directed; (4) submission to search and seizure; and (5) no use or possession of alcohol, drugs or dangerous weapons.

On May 18, 1987, Pedro's probation officer, Robert Gates, added several conditions to his probation, including an 8 p.m. curfew and a directive not to be in an area bounded by First, Bristol, Raitt and McFadden Streets, the operating territory of F-Troop. Gates explained the new terms to Pedro, who stated he understood and, at Gates's request, placed his initials next to the conditions.

In June 1987 a supplemental petition was filed charging Pedro with using PCP (Health & Saf. Code, § 11550). On June 30 the minor admitted the petition and the dispositional hearing was set for August.

On July 13 Gates visited Pedro's residence at 10 p.m., but he was not at home. As a result, Gates informed other probation officers to arrest Pedro if they saw him in F-Troop territory.

On the evening of July 17, several probation officers, including Michael Fleager, joined members of the Santa Ana Police Department's gang unit to patrol a residential neighborhood under F-Troop dominion. Police stopped between five and eight cars over the course of two hours. At approximately 10 p.m., the police detained an orange car. Because the street was a narrow two-lane road, several vehicles were backed up behind the stopped car. Fleager, standing on the sidewalk, saw Pedro in one of the cars with three other youths. Fleager placed the minor under arrest.

On July 29 a supplemental petition alleged the minor violated his probation by missing curfew and traveling within the restricted area. In August the hearing on the supplemental petition was joined with the dispositional hearing on the PCP charges. On October 19 the court sustained the petition alleging the probation violations, committed the minor to CYA, and fixed the maximum confinement at 10 years and 8 months.

## II

Pedro contends the condition restricting his travel cannot support a probation violation because it was unilaterally imposed by the probation

officer. He argues the court alone has the power to modify probation by adding new terms. We agree.

■ It is well settled that courts may not delegate the exercise of their discretion to probation officers. Welfare and Institutions Code section 730, which authorizes juvenile courts to establish probation conditions, provides in part: "The *court* may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Italics added.) The probation officer is statutorily authorized to assist the court by preparing a "social study" of the minor, recommending a disposition, supervising and, in many cases, taking actual custody of the minor. (Welf. & Inst. Code, § 280.) The probation officer may recommend probation terms, but it is the court's responsibility to tailor the conditions specifically to each minor. ■ "[I]n planning the conditions of appellant's supervision, the juvenile *court* must consider not only the circumstances of the crime but also the minor's entire social history." (*In re Todd L.* (1980) 113 Cal.App.3d 14, 20 [169 Cal.Rptr. 625], italics added.)

■ Here, the court never considered the modification restricting travel; in fact, it was never even informed of the change. Pedro was placed on probation in March 1986; the "standard probation terms" were imposed in addition to a nine-month commitment to Los Pinos and a nonassociation order. Afterward, he was released to his parents' custody. In May 1987 the probation officer met with Pedro to explain several new probation terms which included the travel restriction. The terms were written on a form entitled "Gang Violence Suppression Terms and Conditions of Probation." Those terms were devised by probation officers as part of a group effort to monitor suspected gang activities. The juvenile court was never informed of the additional probation terms, nor was a copy of the form forwarded to the court.

The Attorney General acknowledges that a court may not delegate judicial discretion to the probation officer, but argues the condition restricting travel was "derivative" of the court's order not to associate with gang members. In support of this proposition he relies on *People* v. *Thrash* (1978) 80 Cal.App.3d 898 [146 Cal.Rptr. 32] and our decision in *In re Frankie J.* (1988) 198 Cal.App.3d 1149 [244 Cal.Rptr. 254].[2]

In *Frankie J.,* the juvenile court released the minor to his father on "the usual terms and conditions of probation" listed on a preprinted court docu-

---

[2] The Attorney General also cites *In re David W.* (1980) (Cal.App.), which held that the juvenile court "may . . . delegate to the probation officer the discretion to choose the foster home or boarding home which will be most suitable for the minor." Our Supreme Court, on July 18, 1980, ordered the Reporter of Decisions not to publish this opinion.

ment. Frankie J. was subsequently found in violation for possessing a dangerous weapon. In rejecting the minor's claim the trial court delegated its "decision-making" power to the probation officer, we stated: "Frankie J. was represented by a seasoned defense attorney who undoubtedly was familiar with the 'usual' terms and conditions of probation which were enumerated on the preprinted form." (*In re Frankie J., supra,* 198 Cal.App.3d at p. 1154.) Although the *Frankie J.* court did not orally pronounce the conditions on the form, they were *considered* and imposed by the *court.* Here, in contrast, the trial court was completely unaware of the travel restriction added to Pedro's probation conditions. Moreover, this proviso was not a standard term incorporated into the court's preprinted form, but rather one specifically designed for offenders involved with gangs.

The Attorney General's reliance on *People* v. *Thrash, supra,* 80 Cal.App.3d 898, is equally unavailing. *Thrash* merely holds the court need not orally pronounce probation conditions as long as the defendant knows what is required. (*Id.,* at pp. 901-902.) We do not disagree; in fact, we made this very point in *In re Frankie J., supra,* 198 Cal.App.3d at page 1155. But neither decision suggests a probation officer may unilaterally impose a condition.

██ Probation officers have wide discretion to enforce court-ordered conditions, and directives to the probationer will not require prior court approval if they are reasonably related to previously imposed terms. ██ This was not the case here. This was not a derivative order that flowed logically from a general term, such as an order to "violate no laws," but an altogether new term. If it were truly "derivative" then the nonassociation term would support the revocation, but the facts belie such a contention. Pedro's mere presence in the prohibited area did not establish a violation of any *court* imposed condition.[3]

In light of our decision, we need not discuss at length the minor's claim that probation conditions restricting his travel were unconstitutional. ██ We note in passing, however, that conditions infringing on constitutional rights are not automatically invalid (*In re White* (1979) 97 Cal.App.3d 141, 149 [158 Cal.Rptr. 562]); indeed, they will pass muster if tailored to fit the individual probationer. (*Id.,* at p. 151.) For example, while a travel restriction may be proper for a minor who lives outside the gang's territory, it may be overbroad for one who lives, works or goes to school within the area. But the court alone is empowered to determine the propriety of the proposed conditions and their applicability to the individual offender.

---

[3] The nonassociation term was not alleged as a violation. The record does not disclose whether Pedro's traveling companions were fellow gang members.

 Nevertheless, we do not overturn the court's order revoking probation. The evidence supported the court's conclusion Pedro violated his curfew on two occasions. Moreover, he admitted the charge of being under the influence of PCP. These incidents alone support the court's finding that Pedro violated his probation.[4]

### III-V*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed as modified.

Scoville, P. J., and Crosby, J., concurred.

---

[4] The Attorney General argues the minor waived his right to attack the probation condition by not appealing or filing a writ of habeas corpus. Under the particular circumstances of this case, we find no waiver. Pedro could not take an appeal or a writ from a nonjudicial order.

Nor, under the circumstances, can we fault Pedro for not pursuing relief in the trial court. The modification *did violate* the notice requirements of Welfare and Institutions Code sections 775 and 776 when the probation officer informed the indigent juvenile, in his home, he was subject to new probation conditions. But he did not have the advice of counsel, and it would be unrealistic to have expected Pedro to be aware of the legal implications of the probation modification. And while there are circumstances where a probationer may be foreclosed from contesting a condition he earlier accepted, this is not one of them. It would be unreasonable to expect minors to deal with violations of their rights in the same fashion as adults.

*See footnote 1, *ante,* page 1368.