Filed 9/28/16  P. v. Bouchafra CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>HAMZA BOUCHAFRA,<br><br>        Defendant and Appellant. | A147078<br><br>(San Francisco County<br>Super. Ct. No. SCN220555) |

Defendant Hamza Bouchafra was placed on probation after he pleaded guilty to three misdemeanors related to his harassment of his ex-girlfriend.  His probation officer directed him to obtain authorization from the trial court before traveling out of the state (the travel-authorization requirement), though this command was not expressly listed as a probation condition.  After Bouchafra traveled to Morocco to attend his father's funeral without permission, the court found that Bouchafra had violated his probation and required him to submit to GPS monitoring.

On appeal, Bouchafra claims that the travel-authorization requirement is not binding because it was not imposed by the trial court and is therefore unconstitutionally vague.[1]  We conclude that the requirement, while sufficiently specific, is not reasonably related to any express probation condition and that the trial court therefore could not use it as a basis upon which to find a probation violation.  Accordingly, we reverse.

---

[1] In light of our disposition, we need not address Bouchafra's additional claim that he never agreed to the travel-authorization requirement and may have refused probation had the requirement been one of the conditions.

1

In September 2013, Bouchafra pleaded guilty to one count of battery on a person with whom he was in a dating relationship and two counts of annoying phone calls, all misdemeanors.[2] We do not discuss the facts supporting these convictions because they are not relevant to the issues on appeal.

The trial court sentenced Bouchafra to a total term of one year, 364 days in county jail, comprised of a term of 364 days for the battery and consecutive sentences of six months each for the annoying phone calls. The court suspended execution of the sentence and placed Bouchafra on formal probation for three years. His probation conditions included a warrantless search condition, an order to stay away from his ex-girlfriend, and a requirement that he "comply with all the terms and conditions of the Adult Probation Department's individualized treatment and rehabilitation plan."[3]

No travel-authorization requirement was included in either the written or oral probation conditions, but on multiple occasions the trial court told Bouchafra not to travel outside the state without permission. The first time was in connection with a probation violation. He admitted this violation in June 2015, after he disobeyed the stay-away order. Probation was reinstated on the original terms and conditions, and he was ordered to attend additional domestic violence classes. Bouchafra then asked for a delay of his court progress-report date to accommodate his work commitment in Los Angeles. The court told him, "You need to report to your probation officer and let your probation officer know that you're traveling out of the county down to L.A. for employment

---

[2] These charges were brought under Penal Code sections 243, subdivision (e)(1) (battery) and 653m, subdivision (a) (annoying phone calls). As part of the plea, a number of felony charges against Bouchafra were dismissed. All further statutory references are to the Penal Code.

[3] This last probation condition was imposed orally but did not appear in the written probation conditions. We conclude that the trial court's oral pronouncement controls. (See *People v. Pirali* (2013) 217 Cal.App.4th 1341, 1346.)

purposes because they need to know at all times." After Bouchafra responded, "Okay," the court said, "You need to get their permission so you can leave the county." Later in the hearing, the court again told him, "[Y]ou have to know that you cannot travel outside of the county of San Francisco unless you have the permission of your probation officer, and that probation officer needs to be informed of what your plans are, especially business and employment, so that she or he can best schedule and enroll you or get you started with respect to your additional [domestic violence] classes."

The second time Bouchafra was told not to travel outside the state without permission was in August 2015. After a motion was filed to revoke probation based on another incident involving his ex-girlfriend, the parties discussed future court dates. Bouchafra's trial counsel requested that the trial court schedule around Bouchafra's business trip to New York. The probation department representative stated that Bouchafra had not informed his probation officer of the planned travel and indicated that "if he is traveling, probation would need to know, and he would need to get permission as well." Bouchafra's trial counsel indicated she was unsure whether the probation department still had a policy requiring misdemeanor probationers to obtain permission from their probation officers to travel. After stating that it did not know what Bouchafra's probation terms were or what the probation department's travel policy was, the court told Bouchafra, "I do think you should at least get in touch with your probation officer to let her know about that. I'm not going to say right now whether it's a violation for you not to have told her."

The third time Bouchafra was told not to travel outside the state without permission was a week later. At another hearing, a probation department representative indicated that Bouchafra's probation officer had not authorized the trip to New York and "therefore [Bouchafra] was instructed to wait to speak to" the trial court. Noting that a motion to revoke probation was pending, the representative indicated that the department opposed Bouchafra's request to leave the state for over two weeks. After Bouchafra was able to compress his planned trip to nine days, the court permitted him "to travel to New York for work purposes" despite the probation department's continuing objection. The

3

court told him, "You should check in with your probation officer before you leave, immediately before, and the day after you get back."

At an October 2015 hearing, it came to light that Bouchafra never went to New York and instead traveled to Morocco for his father's funeral without first informing his probation officer. Bouchafra's probation officer noted the pending motion to revoke probation and requested that Bouchafra be remanded into custody or, in the alternative, be subject to GPS monitoring, because he had withheld information and disobeyed a court order. The probation officer conceded that there were no explicit travel-related restrictions in Bouchafra's probation conditions but indicated that "it is a policy within [the probation] department that if the defendant wants to travel, [he or she has] to come to the court and the court has to grant permission to travel."

The probation department soon filed a motion to revoke probation based on Bouchafra's travel to Morocco. At the contested hearing on that motion later in October, Bouchafra's probation officer testified that she told Bouchafra, "based on [p]robation policy," not to travel out of the state without submitting his itinerary and obtaining a permission slip and not to travel out of the country at all. The trial court held that Bouchafra violated his probation, stating, "I don't see how leaving the country without permission while you're on . . . supervised probation could be a non-violation of the terms of your probation. [¶] . . . [I]t appears to me implicit in any grant of probation that you've got to stay at least within the United States unless you're given permission to leave." The court reinstated probation and ordered Bouchafra to submit to GPS monitoring.

II.

DISCUSSION

Bouchafra claims that the trial court erred by finding him in violation of probation based upon his unapproved travel to Morocco because the "implicit" travel-authorization requirement was unconstitutionally vague. Although we disagree that the requirement was vague, we agree that it could not support a finding that Bouchafra violated probation

4

because the court did not impose the requirement and the requirement was not reasonably related to any term the court did impose.

Under section 1203.2, subdivision (a), a trial court may revoke probation after proper notice and a hearing "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation . . . officer or otherwise that the person has violated any of the conditions of his or her supervision." The determination whether to revoke probation involves (1) the factual question of whether the probationer has violated a probation condition and (2) a discretionary determination of whether the violation justifies revocation, modification, or continuance of probation. (*Black v. Romano* (1985) 471 U.S. 606, 611; § 1203.2, subd. (b)(1).) Although we generally review decisions on probation-revocation motions with "great deference" to the trial court (*People v. Urke* (2011) 197 Cal.App.4th 766, 773), the issue here, whether the trial court could validly find a probation violation based on Bouchafra's failure to comply with the travel-authorization requirement, is a primarily legal question that we review de novo. (See *People v. Stanphill* (2009) 170 Cal.App.4th 61, 78.)

Bouchafra contends that the travel-authorization requirement is unconstitutionally vague because he had no notice that his failure to comply with it could result in a finding that he violated probation. "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning,' " which encompasses the " 'concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) In contrast to the typical vagueness claim, which focuses on the language of the challenged probation condition itself, Bouchafra's claim is not that the probation department's policy was unclear or that he lacked notice of it. Instead, his claim is that because the trial court did not order it as an express condition of his probation, he lacked notice that it was *binding*.

We agree that the travel-authorization requirement could not support a probation violation. Consistent with the understanding of the parties and the trial court, there is no basis to conclude that the requirement became a probation condition by virtue of the court's indications to Bouchafra at various hearings that he should get permission from

5

his probation officer before traveling outside the county. Under section 1203.3, a court has "authority at any time during the term of probation to revoke, modify, or change its order of suspension or execution of sentence" (§ 1203.3, subd. (a)), and probation may be modified even if a defendant has not violated his or her existing conditions of probation. (*People v. Cookson* (1991) 54 Cal.3d 1091, 1100.) Before a new probation condition is imposed, however, notice must be given and a hearing must be held. (§ 1203.3, subd. (b)(1)-(2); see also § 1203.2, subds. (a) & (b).) Here, there is no indication that the court ever gave notice that it intended to impose the requirement as a probation condition, and there was never a hearing on the matter. Indeed, in finding that Bouchafra had violated probation, the court itself characterized the requirement as an "implicit" condition.

Nor was the travel-authorization requirement a binding term of probation by virtue of its being a directive of the probation department. It is true that "[p]robation officers have wide discretion to enforce court-ordered conditions, and directives to the probationer will not require prior court approval if they are reasonably related to previously imposed terms." (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1373 (*Pedro Q.*); accord *People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358.) [4] So long as a directive of the probation department is a "derivative order that flowed logically from a general term, such as an order to 'violate no laws,' " as opposed to "an altogether new term," it can support a probation violation. (*Pedro Q.*, at pp. 1371-1373.) As we shall explain, the travel-authorization requirement is *not* reasonably related to any of Bouchafra's probation conditions under *Pedro Q.*

In *Pedro Q.*, *supra*, 209 Cal.App.3d 1368, the minor was subject to a probation condition prohibiting him from associating with other members of his gang, and his "probation officer . . . added several conditions to his probation," including that the minor

---

[4] At our request, after oral argument the parties submitted supplemental briefing on whether the travel-authorization requirement could support a probation violation on the theory that it was reasonably related to other conditions of Bouchafra's probation under *Pedro Q.*, *supra*, 209 Cal.App.3d 1368.

stay away from an area that was the gang's "operating territory." (*Id.* at p. 1371.) The minor's probation was revoked after he was found in the prohibited area, although there was no indication that he had been in contact with any other gang members. (*Id.* at pp. 1371, 1373, fn. 3.) The Fourth District Court of Appeal determined that if the prohibited-area directive was "truly 'derivative' " of the nonassociation term, "then the nonassociation term would support the revocation, but the facts belie such a contention. [The minor's] mere presence in the prohibited area did not establish a violation of any *court*[-]imposed condition" and therefore did not constitute a probation violation. (*Id.* at p. 1373, italics in original.) Thus, as Bouchafra persuasively argues, although the prohibited-area directive was " 'reasonably related' " to the nonassociation term in the sense that it enabled compliance with that term, under *Pedro Q.* a probation department's directive "must be one that is limited to clarifying or enforcing the trial court order such that it would be impossible to violate the 'derivative' . . . directive without also violating a court-ordered condition of probation." (Quoting *Pedro Q.*, at p. 1373.)

Here, Bouchafra's probation conditions do not include any "general term" from which the travel-authorization requirement logically flows. (*Pedro Q.*, *supra*, 209 Cal.App.3d at p. 1373.) The trial court imposed the condition that Bouchafra "comply with all the terms and conditions of the Adult Probation Department's individualized treatment and rehabilitation plan," but the record does not reveal any specific requirements of such a plan, and we agree with Bouchafra that this condition cannot be read to require compliance with *any* directive of the probation department. In addition, although the travel-authorization requirement is reasonably related to the search condition and the stay-away order in the sense that both conditions would be impossible to enforce without knowledge of Bouchafra's whereabouts, there is no evidence that Bouchafra violated, or would have necessarily violated, these or any of his other conditions by traveling to Morocco without authorization. In sum, although Bouchafra had notice of the travel-authorization requirement and its dictates were reasonably clear, it could not support a probation violation because the trial court did not impose it and,

7

under *Pedro Q.*, it was not reasonably related to any of the conditions the court did impose.

In reversing the trial court's order, we express no view on whether Bouchafra's unauthorized travel to Morocco could have supported a modification of probation on the theory that the travel constituted "[a] change in circumstances" not amounting to a probation violation. (*People v. Cookson*, *supra*, 54 Cal.3d at pp. 1095, 1100; *People v. Medeiros* (1994) 25 Cal.App.4th 1260, 1263.) Thus, nothing in this opinion should be construed to prevent the trial court on remand from modifying Bouchafra's probation to require GPS monitoring based on such a change in circumstances.

## III.
### DISPOSITION

The October 30, 2015 order modifying probation to require GPS monitoring is reversed.

_____
Humes, P.J.

We concur:

_____
Margulies, J.

_____
Dondero, J.

*People v. Bouchafra* (A147078)

9