Filed 2/24/23  P. v. White CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL RAY WHITE,<br><br>    Defendant and Appellant. | A164227<br><br>(Del Norte County<br>Super. Ct. No. CRF21-9278) |

Defendant Samuel White pleaded guilty to felony resisting arrest causing great bodily injury (Pen. Code, § 148.10, subd. (a)), and he was placed on probation for two years.  On appeal, he challenges some of the probation conditions as unconstitutionally vague or overbroad, or as improperly delegating judicial authority to the probation department.  Defendant also asserts the trial court impermissibly imposed $370 in fines and fees without ascertaining whether he had the ability to pay them.  We agree with appellant as to several of the probation conditions he challenges and remand for the sentencing court to narrow or strike those provisions, but otherwise affirm.

1

# BACKGROUND

On the afternoon of July 14, 2021, defendant was lawfully detained by a pair of National Park Service rangers in Jedediah Smith State Park. According to the presentence investigation report, the rangers came upon defendant while investigating reports of gunshots or explosions. They instructed defendant to leash his dogs, and he refused. They asked for his driver's license, and he reached into, or perhaps entered, his vehicle to retrieve it. "[O]ne thing led to another," as the prosecutor explained, and in extracting defendant from the vehicle one of the rangers badly injured his back. Defendant later told the rangers he had struggled with them only "because he was terrified and thought they were going to kill him."

In a subsequent interview with the probation department, defendant reported past diagnoses of several mental health disorders, including paranoid delusions. He explained he did not take medication, and he refused to pursue other mental health care because he believed providers only wanted to medicate him. Defendant reported having consumed alcohol and experimented with illegal narcotics only in years past, but currently using marijuana at the level of two joints per day.

In a negotiated resolution, defendant pleaded no contest to the felony charge. A misdemeanor count was dropped, and he was placed on two years of formal probation, with a short period in the county jail, a requirement to perform community service, and various supervision terms. As relevant here, defendant's probation includes the following conditions, proposed pursuant to a pre-printed form:

> 3. . . . Report any law enforcement contact to the Probation Officer within 24 hours for any reason. [¶]
> 4. Cooperate with the Probation Officer in a plan for psychological, psychiatric, or substance abuse treatment, or other

2

rehabilitation, and follow all directions of the Probation Officer. [¶] . . . [¶]

24. Provide a copy of any medical prescription to the Probation Department within 2 business days of its receipt. [¶] . . . [¶]

26. Refrain from associating with persons known to you to be engaged in criminal activities, or persons designated to you by the Probation Officer. [¶] . . . [¶]

38. Report to [a mental health] agency . . . and undergo an assessment. . . . . [¶] . . . [¶] Comply with all recommendations contained in said assessment and as directed by the Probation Officer or as approved by the Court.

At sentencing, defendant objected to condition No. 38. "I don't want to set myself up for failure," he told the court. Defense counsel explained that, in his experience, a court-ordered mental health assessment "almost invariably" leads to a requirement for medication. And because of negative side-effects, defendant did not want to medicate. Counsel also asserted that defendant's conduct in this case was not the result of a mental health condition, although the probation officer countered by pointing to a couple of statements defendant made after his arrest that could be considered evidence of paranoia. For example, defendant claimed he was being stalked by people online who knew he does not like people with badges and who may have set him up to be arrested. The trial court imposed condition 38, but not before telling defense counsel that if issues arose on the probation terms, counsel could put the case back on calendar. The court cautioned, however, that as a judge not a doctor he tends to follow the advice of professionals in the field.

Defendant lives on less than $1,000 per month in Supplemental Security Income (SSI). He has a physical disability that leaves him constantly in pain, which the Social Security Administration recognizes as 100 percent disabling. At the time of his arrest and again at sentencing, defendant was homeless and living in his van. Defense counsel therefore

3

requested "that the court order only the minimal fines necessary by law." The court asked whether defendant could pay $25 per month toward required fines, to which defendant responded, "Your Honor, I don't even make it through the month on what I make . . . ." The court then imposed the minimum $300 restitution fine (Pen. Code, § 1202.4), a $40 court operations assessment (Pen. Code, § 1465.8, subd. (a)(1)), and a $30 criminal conviction assessment (Gov. Code, § 70373), for a total of $370, payable at a rate of $25 per month. The judge told defendant, "[i]f you fall delinquent in [payments], you can file a DN-101 [form] with the clerk explaining why and requesting appropriate relief."

Defendant accepted probation on these terms.[1] This timely appeal followed.

## DISCUSSION

### I.

The legal principles that govern this case are well established. Chief among them is that, while a sentencing court has broad discretion in setting probation conditions, that discretion is not unlimited. (*People v. Lopez* (1998) 66 Cal.App.4th 615, 624 (*Lopez*).) Under state law, "[a] term of probation is invalid if it: ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' " (*Ibid.*, quoting *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*).) Moreover, "[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the

---

[1] "Defendant's ultimate acceptance of the conditions of probation does not preclude him from challenging them on appeal." (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1355, fn. 1 (*O'Neil*).)

purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*).)

When a probation condition is challenged as unconstitutionally overbroad, "[t]he essential question . . . is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153 (*E.O.*).)

When a probation condition is challenged as unconstitutionally vague, the question is whether the condition is " 'sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated.' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) The probationer must have " 'fair warning' . . . of the conduct proscribed." (*E.O.*, *supra*, 188 Cal.App.4th at p. 1153.) But we will " 'rely on "context and common sense" ' " to interpret a probation condition, invalidating it as unconstitutionally vague only if no " ' " ' "reasonable and practical construction can be given to its language." ' " ' " (*People v. Rhinehart* (2018) 20 Cal.App.5th 1123, 1129 (*Rhinehart*).)

Setting the terms of probation is a judicial function. "[C]ourts may not delegate the exercise of their discretion to probation officers." (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1372–1373.) A court may, however, "leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation." (*People v. O'Neil*, *supra*, 165 Cal.App.4th at pp. 1358–1359.) The court exceeds the appropriate bounds of this delegation when it imposes a condition that is "entirely open-ended." (*Ibid*.)

5

With the exception of condition No. 38, our review of defendant's probation conditions is de novo.  "[W]hile we generally review the imposition of probation conditions for abuse of discretion, we review constitutional challenges to probation conditions de novo." (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723.)  Defendant's challenges to probation conditions other than No. 38 are framed as constitutional challenges raising pure questions of law.  His challenges would otherwise be forfeited, as defendant did not object to condition Nos. 3, 4, 24, or 26 in the trial court.  (See *Sheena K.*, *supra*, 40 Cal.4th at pp. 888–889; *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)  Our standard of review on condition No. 38 is de novo to the extent the challenge is constitutional, and abuse of discretion otherwise.  (See *In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 (*Ricardo P.*).)

II.

Defendant challenges condition No. 3 as unconstitutionally vague and overbroad.  Condition No. 3 includes a requirement that defendant "[r]eport any law enforcement contact to the Probation Officer within 24 hours for any reason."

Courts have found similar provisions unconstitutionally vague and overbroad.  In *People v. Relkin* (2016) 6 Cal.App.5th 1188, the court of appeal considered a condition requiring the defendant to " 'report to the probation officer, no later than the next working day, any arrests or any contacts with or incidents involving any peace officer.' " (*Id.* at p. 1196.)  The portion of this condition requiring a probationer to report " 'any contacts with . . . any peace officer' " was determined to be vague and overbroad because it potentially could be "triggered when defendant says 'hello' to a police officer or attends an event at which police officers are present." (*Id.* at p. 1197.)  Relying on *Relkin*, this division then struck down a similar requirement " 'to report any

6

police contacts' to the deputy probation officer." (*In re I.M.* (2020) 53 Cal.App.5th 929, 936 (*I.M.*)).

The Attorney General concedes that condition No. 3 "suffers from the same defect as the conditions in *Relkin* and *I.M.*" He asks that we modify the condition to remedy its constitutional flaw (citing *People v. Brand* (2021) 59 Cal.App.5th 861, 871) or remand so the trial court can address the error. On reply, defendant asks that we modify the condition in a somewhat different manner. We will remand for the trial court to hear the arguments of both parties and narrow or strike condition No. 3. (See *In re I.M*, *supra*, 53 Cal.App.5th at p. 936.)

III.

Defendant challenges condition No. 4 as unconstitutionally vague and an improper delegation of judicial authority. Condition No. 4 requires defendant to "[c]ooperate with the Probation Officer in a plan for psychological, psychiatric, or substance abuse treatment, or other rehabilitation, and follow all directions of the Probation Officer." Defendant attacks this condition on two grounds, one of which has merit.

First, defendant contends condition No. 4 is vague because it is unclear whether defendant "must 'follow all directions of the Probation Officer,' *period,* or only those directions concerning a 'plan for psychological, psychiatric, or substance abuse treatment, or other rehabilitation.' " We think context and common sense require the latter of these interpretations. (See *Rhinehart, supra*, 20 Cal.App.5th at p. 1129.) The context is that "follow all directions" is immediately proceeded by detailed language about cooperating in a treatment program. And common sense tells us the court's order should be understood as limited to directions relating to these programs. Otherwise, this condition would be an unlimited—and clearly

7

improper—delegation of judicial authority to the probation department. We agree that the language of this condition could be clearer, for example by referencing "all *related* directions of the Probation Officer," but we decline to strike condition No. 4 for falling short in this regard, instead construing it to contain that limitation.

Defendant's second contention is that condition No. 4 allows the probation department to insist defendant participate in *any* type of plan for his rehabilitation, including but not limited to psychological, psychiatric, or substance abuse treatment. Defendant persuasively identifies this condition as an unconstitutional delegation of judicial authority to defendant's probation officer. Case law holds that a court may validly order a probationer to participate in an unspecified residential drug treatment program, leaving the choice as to which program to the probation department. (*People v. Penoli* (1996) 46 Cal.App.4th 298, 307–308.) The Attorney General relies on *Penoli* in attempting to defend condition No. 4. But here, the trial court has not determined that defendant needs a substance abuse program, and it did not check the box on the form order for a probation condition that would have required defendant to submit to a substance abuse assessment. Nor has the trial court identified *any other* type of rehabilitative program as appropriate in this case. Yet the language of condition No. 4 clearly allows the probation department to insist on a substance abuse program or some "other rehabilitati[ve]" program that the trial court did not order. This is a much broader delegation to the probation department than occurred in *Penoli*, and it leaves to the probation officer far more than the "details that invariably are necessary to implement the terms of probation." (*O'Neil*, *supra*, 165 Cal.App.4th at pp. 1358–1359; see also *In re Debra A.* (1975) 48 Cal.App.3d 327, 330 [improper delegation of authority where choice of custodial program

is left to probation department].) Condition No. 4 is too open-ended to stand. (*O'Neil*, at p. 1359.) On remand, it must be narrowed or stricken.

IV.

Defendant challenges condition No. 24 as facially overbroad. Condition No. 24 requires defendant to "[p]rovide a copy of any medical prescription to the Probation Department within 2 business days of its receipt."

Invoking his state and federal right to privacy for medical information (see *Griswold v. Connecticut* (1965) 381 U.S. 479, 485; Cal. Cost., art. 1, § 1), defendant contends there is no conceivable reason the probation department needs to know whether he is prescribed antibiotics, blood pressure medication, or drugs related to reproductive health. He asserts there is no relationship between such information and the government's compelling interest in reformation and rehabilitation, and that the probation condition is therefore constitutionally overbroad. (See *People v. Hackler* (1993) 13 Cal.App.4th 1049, 1058 [probation condition that impinges on right to privacy "must be narrowly drawn" to be "reasonably related to a compelling state interest in reformation and rehabilitation"].)

The Attorney General responds that "holistic rehabilitation" requires the probation officer to be aware of all existing and future prescriptions that defendant receives. The truth of this proposition is not self-evident. The probation officer is not a doctor, and we see no reason he or she needs to understand the specifics of defendant's medical care, except to the extent it affects defendant's rehabilitation. The Attorney General explains that condition No. 24 allows the probation officer to check on whether defendant is filling any new prescriptions issued as part of his rehabilitation plan. We accept that, in an appropriate case, a requirement to disclose prescriptions for psychotropic drugs may promote rehabilitation, but "[a] probation

9

condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition." (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) Since condition No. 24 is not limited to prescriptions for psychotropic drugs or any other drugs that might be connected to defendant's rehabilitation, we conclude no such constitutionally required tailoring occurred in this case, and we agree with defendant that condition No. 24 is facially overbroad. On remand it must be narrowed or stricken.

V.

Defendant also challenges condition No. 26 as facially overbroad, an infringement on his right of association, and an unconstitutional delegation of authority to the probation department. Condition No. 26 requires defendant to "[r]efrain from associating with persons known to you to be engaged in criminal activities, or persons designated to you by the Probation Officer." Defendant challenges only the second portion of this condition, which prohibits him from associating with unspecified "persons designated . . . by the Probation Officer."

Case law establishes that the trial court may limit a probationer's right of association, in an effort to both enhance his rehabilitation and protect the public. (*O'Neil*, *supra*, 165 Cal.App.4th at p. 1356.) For example, in a drug case "a properly drawn condition prohibiting defendant from associating with known drug users would be entirely reasonable." (*Id.* at p. 1357.) Similarly, those involved in gang crimes may be prohibited from associating with persons they know to be gang members. (*Lopez*, *supra*, 66 Cal.App.4th at pp. 637–638.) But the court may not simply prohibit a probationer from associating with any " 'person, as designated by your probation officer.' " (*O'Neil*, *supra*, 165 Cal.App.4th at pp. 1354–1355.) Such an open-ended

10

delegation to the probation department, "[w]ithout a meaningful standard . . . to provide the necessary specificity," renders a probation condition unconstitutionally overbroad. (*Id*. at p. 1358.)

The Attorney General attempts to salvage condition No. 26 by reading it narrowly. The Attorney General asserts that the provision "can be reasonably read as directing a probationer not to associate with people he knows—or who the probation officer knows—to be engaged in criminal activity." We think this an unreasonably narrow reading of condition No. 26, which is more naturally understood as prohibiting defendant from associating with two different classes of person: those he knows to be engaged in criminal activities and those who, for whatever reason, are "designated to [him] by the Probation Officer." Nothing in the language or structure of condition No. 26 suggests that the probation officer can only designate as prohibited persons those the probation officer knows to be engaged in criminal conduct. Under *O'Neil*, condition No. 26 is thus unconstitutionally overbroad. (See *O'Neil*, *supra*, 165 Cal.App.4th at pp. 1354–1355.) On remand, it must be narrowed or stricken.

## VI.

Defendant challenges condition No. 38 as unreasonable under *Lent*, facially overbroad, and an unconstitutional delegation of authority to the probation department. Condition No. 38 requires defendant to undergo a mental health assessment and "[c]omply with all recommendations contained in said assessment and as directed by the Probation Officer or as approved by the Court." We conclude this probation condition is reasonable and sufficiently respects defendant's constitutional rights, but only because we read condition No. 38 narrowly.

11

Defendant attacks the portion of condition No. 38 that he contends requires him "to follow 'all recommendations' stemming from the mental health assessment." Defendant argues this requirement is unreasonable under *Lent*, and that it is a facially overbroad infringement of his right to privacy, in that it effectively requires him to take psychotropic medications. *If* condition No. 38 were read to require defendant to "[c]omply with all recommendations contained in [the mental health] assessment," full stop, we would agree with defendant's challenge. Likewise, *if* the condition were construed to require compliance with all the assessment's recommendations as directed by a probation officer. "[A]dults have a state constitutional privacy right and a fundamental due process freedom to refuse to take antipsychotic medications." (*People v. Petty* (2013) 213 Cal.App.4th 1410, 1417 (*Petty*).) Those interests are significantly impaired by a probation condition that requires a probationer to take such medications at the direction of a mental health worker or a probation officer. (*Id.* at pp. 1412, 1417.) Like the *Petty* court, we would strike down such a provision as unreasonable in this case. (*Ibid.*) The record currently contains no "[m]edically informed justification for insisting upon defendant's compliance with his mental health worker's medical decisions." (*Id.* at p. 1420.)

But defendant's rendering of condition No. 38 omits important language that, in our view, preserves the viability of the condition. Defendant is only required to comply with recommendations in the assessment "as directed by the Probation Officer or *as approved by the Court*." (Italics added.) This last phrase anticipates judicial oversight over a probation officer's decision to impose a recommendation in the mental health assessment. In the same vein is the court's advisement to defense counsel at sentencing that, should issues arise regarding probation terms, counsel could

12

put the case back on calendar. In context, we therefore construe condition No. 38 as requiring defendant to comply with recommendations made in the mental health assessment, to the extent directed by his probation officer *except* that if defendant challenges any such direction in the trial court, he need not follow the recommendation unless and until it is "approved by the Court."

So understood, probation condition No. 38 is reasonable under *Lent* and not constitutionally defective. Substantial evidence supports the conclusion that defendant's criminal conduct here may have been caused or exacerbated by paranoia or other mental health issues. For example, defendant accused the rangers of targeting him, accused members of the public of stalking him online and, after the rangers had subdued him, warned that he would commit " 'suicide by cop' " when released from custody. We conclude that requiring a mental health assessment is reasonably related to the crime of which defendant was convicted and sufficiently tailored to the government's interest in preventing future criminality. (*Lent*, *supra*, 15 Cal.3d at p. 486; *Ricardo P.*, *supra*, 7 Cal.5th at p. 1122; *Sheena K.*, *supra*, 40 Cal.4th at pp. 881–882.) We trust that, if a mental health assessment results in a recommendation that defendant take medication to which he is opposed, the trial court will carefully weigh the medical evidence and defendant's constitutional interests, as set forth in *Petty*, *supra*, 213 Cal.App.4th 1410, before deciding whether the constitutional standard is met. Only because condition No. 38 keeps the trial court involved in determining whether defendant may, after the assessment, be compelled to take medication, does this probation condition pass muster.

13

VII.

Defendant challenges as a violation of due process the imposition of $370 in fines or fees without a determination that he has the ability to pay them. He relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). The Attorney General, for his part, asserts that whether a restitution fine is constitutionality excessive must be analyzed under the Eighth Amendment, not the Due Process clause (citing *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069–1071), although defendant insists he brings no Eighth Amendment challenge. We need not resolve the weighty legal dispute between the parties as to which constitutional provision applies because, even on defendant's theory, we see no constitutional violation on the facts of this case. *Dueñas* is easily distinguished.

In *Dueñas* the trial court imposed, on an indigent defendant caught driving with a suspended license, a $300 fine plus penalty and assessment, in addition to a court facilities assessment, court operations assessment, and restitution fine. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1162.) The court gave defendant Dueñas the option of spending nine days in the county jail instead of paying the $300 fine, and over the course of several past cases Ms. Dueñas had served 51 days in jail solely because she was unable to pay imposed fines. (*Id.*, at pp. 1161–1162.) The facilities and court operations assessments and the restitution fine the court did not stay or waive, indicating "it would neither consider Dueñas's inability to pay the restitution fine nor relieve her of it at the close of probation" but would send any unpaid balance to collections at the close of probation. (*Id.* at p. 1172.)

Here, by contrast, when the trial court imposed a restitution fine and assessments totaling $370, it set a payment schedule of $25 per month and instructed defendant that if he fell behind on payments he could "file a DN-

14

101 with the clerk" and seek "appropriate relief." Defendant does not explain what relief is available with a DN-101 form, nor does he contend that such relief would be inadequate, in the event that defendant is unable to make the payments the trial court ordered. The context of the court's remark suggests that the court thought community service work could be a way to work off the fine, and that it could be arranged through this form. Unlike in *Dueñas*, there is no suggestion defendant will serve time in jail if he is unable to pay the imposed fine, nor that unpaid fines will necessarily be sent out for collection. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1162, 1172.) Also, the Attorney General points out that defendant somehow affords a two-joint-per-day marijuana habit, and defendant offers no reply as to why this is not substantial evidence he could pay $25 per month toward fines and fees. Defendant has accordingly failed to carry his burden on appeal of establishing a Due Process violation under *Dueñas*.

## DISPOSITION

The matter is remanded so the trial court can narrow or strike probation conditions numbered 3, 4, 24, and 26, but the judgment is otherwise affirmed.

TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*People v. White* (A164227)