Filed 5/28/26  In re L.B. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re L.B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>L.B.,<br><br>    Defendant and Appellant. | A174314<br><br>(Contra Costa County Super. Ct. No. J2500027) |

In this juvenile wardship proceeding, defendant L.B. entered a no contest plea to an allegation of misdemeanor grand theft, and the juvenile court ordered that she be placed on probation for one year.  On appeal, L.B. challenges two of the probation conditions, arguing (1) a condition requiring her to submit to search and seizure at any time is unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*); and (2) a condition requiring her to follow orders from her probation officer is unconstitutionally vague and overbroad, and improperly delegates authority to the probation officer to set conditions of probation.

1

We reject L.B.'s challenge to the search condition. We will direct that the condition pertaining to probation officer orders be modified, and we will affirm the juvenile court's order as modified.

## I. BACKGROUND

In January 2025, the Contra Costa County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code[1] section 602, subdivision (a), alleging L.B. committed felony grand theft (Pen. Code, § 487, subd. (a); allegation 1) and organized retail theft (*id.*, § 490.4; allegation 2).

The probation report describes the events underlying these allegations. On November 25, 2024, L.B., who was then 17 years old, and two women were arrested for allegedly taking beauty products worth about $1,000 from an Ulta Beauty store in San Ramon. Earlier in the day, L.B. and the two women were in an Ulta Beauty store in Livermore and allegedly attempted to steal some items but dropped the merchandise before leaving the store. At the San Ramon store, according to the manager, L.B. and the two women took items, walked out of the store, and fled in a car. Police responded and followed the car but gave up the chase for safety reasons after the fleeing car accelerated through red lights.

After returning to the San Ramon store, police were informed by staff that one of the stolen items contained a GPS tracking device. Using the tracking device, police located and stopped the car. The stolen items were in the car, on the floor of the front passenger seat and on the right floorboard in the back seat. L.B. was the passenger in the back seat. Police arrested L.B. and the two women.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

On July 18, 2025, pursuant to a negotiated agreement, the first allegation in the petition (grand theft) was reduced from a felony to a misdemeanor (Pen. Code, § 487, subd. (a); see *id.*, § 489, subd. (c)(1)); L.B. entered a no contest plea as to that amended allegation; and the court dismissed the organized retail theft allegation. Moving to disposition, the juvenile court adjudged L.B. to be a ward of the court and placed her on probation for one year.

The court imposed several conditions of probation, including a search condition (condition 9) that required L.B. to "submit your person, any personal property, vehicle under your control, and your residence, to search and seizure, at any time of day or night, with or without a warrant, to any peace officer." Another condition (condition 4) required in part that L.B. obey all laws; attend school or work; and "report to your probation officer as directed and follow his or her orders."

After the July 18, 2025 hearing where the court had specified the probation conditions, L.B.'s counsel filed on August 27, 2025 a written objection to the search condition. The court issued an order the next day (August 28, 2025) overruling the objection and adhering to the probation terms ordered at the July 18, 2025 hearing.

L.B. appealed.

## II. DISCUSSION

### A. *The Search Condition*

L.B. contends the search condition is unreasonable under *Lent*, *supra*, 15 Cal.3d 481. Under the *Lent* test, which applies in evaluating probation conditions for both adults and juveniles (*In re Cesar G.* (2022) 74 Cal.App.5th 1039, 1045 (*Cesar G.*)), "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and

3

(3) requires or forbids conduct which is not reasonably related to future criminality . . . .' " (*Lent, supra,* 15 Cal.3d at p. 486.)  The *Lent* test "is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)  We review the challenged condition for abuse of discretion.  (*Ibid.*)

Here, the search condition is related to L.B.'s underlying theft offense, so the first prong of the *Lent* test is not satisfied, and the condition is valid.  As outlined in the police reports (which provided the factual basis for L.B.'s no contest plea), L.B. took items from a beauty supply store, and the stolen items were found in the car when L.B. and her companions were stopped by police.  There is a direct relationship between L.B.'s theft of items from a retail store and the requirement that she submit to warrantless searches that will ensure she is not again in possession of stolen property.  (See, e.g., *In re Binh L.* (1992) 5 Cal.App.4th 194, 204 [search condition was appropriate where underlying crime was automobile theft, "an activity that rationally connotes possession of tools to enter and operate locked automobiles, possession of small articles taken from such automobiles, and other forms of larcenous behavior"]; *People v. Patton* (2019) 41 Cal.App.5th 934, 945 [electronic device search condition was related to defendant's offense of theft of electronic devices].)

L.B. contends the search condition here does not have a sufficient "nexus" to her conduct.  She argues that, since her offense involved stealing items in the company of two adult women, a proper condition should state the authorized searches "were to look for stolen items, or were to be conducted when [L.B.] was with unrelated adult[s] . . . ."  But L.B. cites no authority requiring that a search condition be expressly linked to the precise circumstances of the underlying offense.  That a differently crafted condition

4

might also be valid does not show that the search condition here is unrelated to L.B.'s theft offense, for purposes of the first *Lent* prong. (*Lent*, *supra*, 15 Cal.3d at p. 486.)

Cesar G., *supra*, 74 Cal.App.5th 1039, cited by L.B., does not support her proposed interpretation of *Lent*'s first prong. In *Cesar G.*, our colleagues in Division Two of this court, focusing on the third *Lent* prong, upheld a probation condition authorizing searches for alcohol and controlled substances. (*Cesar G.*, at pp. 1044, 1046–1047.) The minor's conduct there involved alcohol abuse and intoxicated driving. (*Id.* at pp. 1043, 1046.) The *Cesar G.* court did not address whether a broader search condition would have been invalid, and because it found the condition at issue to be reasonably related to the defendant's future criminality for purposes of *Lent*'s third prong, the appellate court did not discuss the other elements of the *Lent* analysis. (*Cesar G.*, at p. 1047.)

L.B. also argues a search conducted pursuant to the condition at issue here would not reveal whether she was involved in theft offenses. She states that if, for example, a search found she possessed beauty products, "there would be no real way to determine whether those items had been lawfully purchased or not." This hypothetical does not persuade us the search condition at issue has no relation to L.B.'s underlying delinquent conduct. We decline to hold the reasonableness of a search condition hinges on whether its exercise will always result in clear evidence of unlawful conduct.

Finally, L.B. argues generally that a condition of juvenile probation must be tailored to a minor's circumstances and needs. (See *People v. Rios* (2011) 193 Cal.App.4th 584, 597.) But she does not develop any argument demonstrating the court had to tailor the conditions here beyond what is required by the governing *Lent* test (or by constitutional provisions, which

5

L.B. does not contend are implicated by the search condition here). And the cases that L.B. cites on this point do not persuade us more tailoring was required. (See *In re P.O.* (2016) 246 Cal.App.4th 288, 296 [cited by L.B.; in discussing *Lent*'s third prong, appellate court *declines* to adopt a strict tailoring requirement that would make it impossible to impose standard search conditions]; *In re Erica R.* (2015) 240 Cal.App.4th 907, 914 [finding electronic search condition was not properly tailored under *Lent*].)[2] In any event, we note the trial court here *did* extensively modify the set of probation conditions initially recommended by the probation officer.

Here, as discussed, the search condition is related to L.B.'s underlying theft offense, so the first prong of *Lent* is not satisfied. We therefore need not consider the other *Lent* elements.

## B. *The Requirement To Follow the Probation Officer's Orders*

L.B. contends the portion of probation condition 4 that requires her to "report to your probation officer as directed and follow his or her orders" is

---

[2] L.B. also cites without discussion section 730, subdivision (b), which at the time of the July 2025 disposition hearing stated a juvenile court may "impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Former § 730, subd. (b), as amended by Stats. 2022, ch. 58, § 40.) We note section 730, subdivision (b) was amended effective January 1, 2026, and now states a court may "make any and all reasonable orders for the conduct of the ward, including conditions of probation that shall meet all of the following requirements: [¶] (1) The conditions are individually tailored, developmentally appropriate, and reasonable[;] [¶] (2) The burden imposed by the conditions shall be proportional to the legitimate interests served by the conditions[;] [¶] (3) The conditions are determined by the court to be fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b), as amended by Stats. 2025, ch. 575, § 9.) Neither party discusses this amendment or contends that it affects the resolution of this appeal.

unconstitutionally vague and overbroad. We review constitutional challenges to probation conditions de novo. (*People v. Appleton* (2016) 245 Cal.App.4th 717, 723.)

Our Supreme Court outlined the vagueness and overbreadth limitations on probation conditions in *In re Sheena K.* (2007) 40 Cal.4th 875: "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.] A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Id.* at p. 890.)

In addition, as L.B. notes, courts may not delegate to probation officers the authority to set probation conditions. (*In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1372.) A probation officer has wide discretion to enforce court-ordered conditions and to give directives to a probationer, if those directives are "reasonably related to previously imposed terms." (*Id.* at p. 1373; *People v. Smith* (2022) 79 Cal.App.5th 897, 902 ["While the probation officer may properly specify the details necessary to effectuate the court's probation conditions, it is the court's duty to determine the nature of the requirements imposed on the probationer."].) L.B. argues the condition requiring her to follow her probation officer's orders is defective because it does not state those orders must be tied to the probation conditions imposed by the court.

In response, the Attorney General argues that, in context, the condition is reasonably interpreted to mean L.B. "must follow her probation conditions, which have been explained to her, as well as the reasonable orders of her

probation officer that are related to those conditions." Alternatively, the Attorney General states he does not oppose a modification to the condition to state L.B. must report to her probation officer and "follow his/her orders related to the probation conditions imposed by the court." In her reply brief, L.B. notes the plain language of the condition does not contain the limitation the Attorney General states should be implied, but L.B. agrees the modification suggested by the Attorney General would resolve any question of improper delegation.

We agree with L.B. that the condition as drafted does not clearly demarcate the scope of the probation officer's wide discretion to enforce the court's conditions. To remove any ambiguity on this point, we will direct that the condition be modified to include the clarifying language suggested by the parties.

## III. DISPOSITION

Probation condition 4 is modified so that the sentence beginning with "Report to DPO . . ." reads: "Report to DPO as directed and follow his/her orders related to the probation conditions imposed by the court." As so modified, the juvenile court's order placing L.B. on probation is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.

8