Filed 7/14/25  In re T.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re T.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>T.M.,<br><br>　　　Defendant and Appellant. | F088264<br><br>(Super. Ct. No. 24CEJ600122-1)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Leanne Le Mon, Judge.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Dina Petrushenko and Carly Orozco, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]　　Before Levy, Acting P. J., Meehan, J. and Snauffer, J.

Minor T.M. contends on appeal that the juvenile court's disposition order must be reversed and the matter remanded because the court abused its discretion when it denied her request to withdraw her admission. She further contends the probation condition requiring her to write an essay on character violates her right to free speech under the First Amendment of the United States Constitution.[1] The People disagree. We affirm.

## PROCEDURAL SUMMARY

On February 26, 2024, a juvenile wardship petition was filed in Fresno County Superior Court pursuant to Welfare and Institutions Code section 602, alleging minor committed attempted second degree robbery (Pen. Code, §§ 664, 211;[2] count 1) (first petition).

On May 13, 2024, minor stipulated to the prima facie case but denied the allegation.

On May 28, 2024, a second juvenile wardship petition was filed in Fresno County Superior Court pursuant to Welfare and Institutions Code section 602, alleging minor committed battery on school property (§ 243.2, subd. (a)(1)) (second petition). Minor denied the allegation.

On May 29, 2024, the juvenile court allowed the district attorney to amend the first petition by interlineation to allege minor committed felony grand theft (§ 487, subd. (c), count 1) (amended petition). The court struck the attempted robbery allegation in count 1 of the first petition. Minor admitted the allegation of the amended petition, and the second petition was dismissed.

On June 25, 2024, the juvenile court held a disposition hearing. A hearing was conducted pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. In the *Marsden* hearing,

---

[1] All further Constitutional references are to the United States Constitution.

[2] All statutory references are to the Penal Code unless otherwise noted.

2.

minor moved to withdraw her admission to grand theft and moved pursuant to *Marsden* to be appointed a new attorney. The court denied both motions. However, the court granted minor's motion pursuant to Welfare and Institutions Code section 786 to dismiss the second petition and seal her records. The court adjudged minor a ward of the court with a maximum term of confinement of two years. Minor was released to her parents with the option for probation to impose up to 30 days on the electronic monitoring (global positioning system) program. The court imposed various terms and conditions of probation. As recommended by probation, the court ordered defendant to write and submit to her probation officer a three-page essay on character as a condition of probation.

On June 25, 2024, minor filed a notice of appeal.

## FACTUAL SUMMARY[3]

### Amended Petition

On July 20, 2023, minor went to the victim's house and asked her to hang out at a nearby park with her. Minor and the victim were friends. The victim's younger sister joined them. When they arrived at the park, two other juvenile girls they knew were waiting for them. One gave the victim a "dead stare" as she approached her. The victim attempted to leave, but minor chased her. Minor grabbed the victim by the hair while the two other juveniles threw the victim to the ground, demanding money. One of the other juveniles then hit the victim in the face 13 or 14 times until she became unconscious. Meanwhile, minor held back the victim's sister to prevent her from helping the victim. One of the other juveniles video recorded the attack on a cell phone. The recording showed minor smiling during the attack.

---

[3]     The facts of the underlying offense are from the probation report.

*Second Petition*

On March 8, 2024, minor approached the victim[4] as she walked to her mother's car to be picked up after school, and told the victim to take off her backpack. When the victim did not comply, minor began punching her "a lot of times," primarily in the face, then kicked her twice once she was on the ground.

A video recording of the incident posted to a social media website showed minor demanding the victim remove her backpack, telling her to "take it off," then hitting the victim in the head with a closed fist as the victim stepped away from minor. It then showed minor grabbing the victim by her sweatshirt and throwing her to the ground, where she punched her seven to eight more times as the victim attempted to stand. It next showed minor pushing the victim back to the ground and continuing to punch and kick the victim roughly 20 to 30 more times. The video then showed the victim trying to grab minor's shirt and punch minor, but minor stated, "Let go of my shirt, b[****]," and pushed the victim back to the ground, kicking the victim twice before she ran away.

## DISCUSSION

### I.    WITHDRAWAL OF ADMISSION

Minor contends the juvenile court erred when it denied minor's request to withdraw her admission to count 1 of the amended petition. She argues that when the court questioned her pursuant to *Gladys R.*[5] about whether she understood right from wrong on July 20, 2023, the day of the incident alleged in the amended petition, minor thought the court was instead asking whether she understood right from wrong on May 29, 2024, the day of the court hearing. She also argues she did not understand the

---

[4]    The record is unclear as to whether each incident involved the same victim or two different victims.

[5]    *In re Gladys R.* (1970) 1 Cal.3d 855.

4.

implications of admitting to the amended charge in exchange for dismissal of the second petition.  The People disagree.  We agree with the People.

### A.    Background

On May 29, 2024, the parties agreed on a disposition of the case.  Defense counsel explained to the juvenile court, "[Minor] will be admitting to an amended charge of [section] 487, sub[division] (c), grand theft, in the … [amended petition].  And in light of her admission in the [amended petition], the [second petition] will be dismissed."  Accordingly, the court struck the attempted robbery allegation and amended count 1 of the first petition to grand theft (§ 487, subd. (c)) and dismissed the second petition.

The juvenile court then explained it was going to present a series of questions to minor to determine whether she understood the difference between conduct being right or wrong, and whether her parents or someone else had taught her the difference between right and wrong.  The court questioned minor pursuant to *Gladys R.* as follows:

> "THE COURT:  …  I do want to go through with you that you understood the difference between conduct being right and conduct being wrong and that someone at some point had taught you that, whether it be your parents, [or] the school.  The example I usually use is that example if you went into a store and you wanted a candy bar, did you know back on July 20[,] 2023, that you had to pay for that and that it would be wrong to walk out without paying.  Is that something that you understood?
>
> "[MINOR]:  Yes.
>
> "THE COURT:  And is that something that you understood on July 20[], 2023, that it was wrong to take other people's property?
>
> "[MINOR]:  Yes.
>
> "THE COURT:  And in counsel's discussion with [minor], are you satisfied that she did understand the difference between right and wrong on that date and time?
>
> "[DEFENSE COUNSEL]:  Yes, Your Honor."

The juvenile court then explained to minor her due process rights and that by admitting amended count 1, she was waiving those rights. The following colloquy occurred:

"THE COURT: And as to your rights, you do have a right to have an adjudication, which is a court trial in the juvenile court as to the truth of the allegations in the petition. At that trial you would have a right to see and hear witnesses testify. You would have a right to cross-examine witnesses. You would have a right to remain silent or to testify on your own behalf. And you would have a right to present your own evidence and your own witnesses at no cost to you. Do you understand that you have those rights?

"[MINOR]: Yes.

"THE COURT: And do you understand that you would be giving up those rights if you admit to the amended [c]ount 1?

"[MINOR]: Yes.

"THE COURT: And do you understand that the maximum period of confinement for a felony violation of … [s]ection 487[, subdivision] (c) is [two] years? Doesn't mean you're going to serve [two] years, but that is the maximum. Do you understand that?

"[MINOR]: Yes.

"THE COURT: And have you had enough time to talk to your attorney about your case?

"[MINOR]: Yes.

"THE COURT: And as to a violation of … [s]ection 487[, subdivision] (c), grand theft of a person, as a felony, as amended in [c]ount 1 of the [first petition], do you admit that you committed that offense on or about July 20[], 2023?

"[MINOR]: Yes. [¶] … [¶]

"THE COURT: … As to the [second petition], is there a motion?

"[PROSECUTION]: Yes, Your Honor. In the [second petition] motion, the People move to dismiss in light of the admission, reserving right to comment and restitution.

"THE COURT:  The Court will grant that and the [second petition] will be dismissed reserving right to comment and restitution."

The juvenile court found minor's admission was made knowingly, intelligently, and voluntarily.

### *Probation Report*

The June 25, 2024 probation report stated minor was 12 years old at the time of the incident underlying the amended petition.  Minor had no disciplinary incidents at school.  It described the factual basis for the allegations in the amended petition and the second petition that was dismissed.  It stated minor was interviewed by the probation officer on June 10, 2024.  During the interview, minor made a number of admissions and denials to the probation officer concerning the incident on July 20, 2023.  Minor admitted she lured her friend, the victim, to the park but denied knowing what the other two juveniles were planning to do to the victim.  She stated she had not wanted "anything like that" to happen to the victim and that the incident had been the worst day of her life. The report stated minor was remorseful and that she realized at the time of the report that she should not have done it, but instead should have told her mother that the other two juveniles had "blackmailed" her into luring the victim to the park.

The report also stated minor told the probation officer she believed she had anxiety and panic attacks, and would wake up crying on the floor in the fetal position. She stated these attacks had occurred in certain instances at school, and she had self-harmed in the past and had experienced suicidal ideation.  Minor stated she had been sexually abused by her grandmother's friend beginning in 2014 until her family relocated in 2018.  Minor told her parents about the sexual abuse in 2023, after the perpetrator passed away.  Minor also experienced the death of another family friend from a drug overdose and witnessed her dog get hit by a car.

7.

The report stated minor was respectful at home, did her chores, and obeyed her curfew. She ran away from home twice while living in her grandmother's town but had not run away since they relocated.

Minor's mother stated to probation that minor was dropped on her head as a baby, requiring a metal plate with screws on the left side of her head. The report stated minor's mother was unaware of minor being the victim of any sexual or physical abuse. The only aggressive behavior minor's mother witnessed was minor once punching a hole in her bedroom wall.

The report stated minor's father had a violent history, including a juvenile record for carrying a dirk or dagger, sexual battery by way of an accomplice, misdemeanor vandalism, and an adult record, including a conviction for driving without valid privileges and multiple dismissed cases of domestic violence or battery against minor's mother. It also stated minor's mother had a dismissed case for domestic violence assault against minor's father and two brothers.

The report included minor's record of one prior violation of section 273.6 for misdemeanor violation of a protection order when she was 11 years old, which was handled at the school and family level.

***Disposition Hearing and Marsden Hearing***

At the June 25, 2024 disposition hearing, defense counsel informed the juvenile court that minor wanted to withdraw her admission and requested a *Marsden* hearing. The court confirmed with minor that she wanted to "receive a different court-appointed attorney." The court then closed the courtroom and held a *Marsden* hearing.

During the *Marsden* hearing, the juvenile court asked minor to explain her dissatisfaction with defense counsel. Minor stated,

> "I'm not satisfied because I feel like I wasn't understanding the last court and what was told to me. And I want to be able to talk without—and

8.

understand without misunderstanding anything. So don't put me in a position that I'm not able to get out of for a whole year."

The juvenile court asked minor to be more specific about what she did not understand. She replied,

> "Like when you—I think it was you here, um, when you said if I knew right from wrong. I thought you meant in this moment. But my—I had a long talk with my father and [he] made me understand more better [*sic*] of what happened because my father is more, um, he's more, like, he's been through the juvenile system before and he knows a lot about it. So he was talking to me about it and it helped me understand what was actually going on."

Minor stated that after the juvenile court took her admission, her mother subsequently talked with minor's father about minor's admission, and minor's father spoke with minor afterwards. Minor stated her father told her "basically that [the offense] would be on my permanent record for about 11 years. And my misunderstanding was how long it would be on my record and what it would do to affect my life in general," and that, "it would affect me getting a job. It will affect my career in the future." The court asked minor if she knew why her father told her that, and she responded,

> "I don't know. But what I do know is that it had to do with the last court date when I said I was going to be admitted [*sic*] because I didn't get the full understanding. But in my thoughts in that exact moment was I wanted it over and done with, but when I came to an understanding of what it would do to my future, it made me want to appeal the court case to a higher court."

The juvenile court asked minor if she was basing her motion to withdraw "off of feeling like you don't understand—you didn't know all of the consequences based on what your dad told you, if I'm understanding correctly?" Minor responded, "For the most part, yes." The court asked whether minor was "assuming what [her] dad told [her] was true," and minor responded that she was. The court then asked minor if the court or defense counsel were to tell her that the adjudication would "not necessarily" be on her

9.

"permanent record for 11 years," whether "that [would] change [minor's] opinion of [her] not understanding the last court date?" Minor responded that it would not. When the court asked why it would not, minor responded,

> "Because it's also affecting who I am in the present and affecting how others look at me. And I want to be able to appeal it to a higher court so that way I can get a full understanding. But at the same time, me and the victim, we had a talk, me, the mom, and her, and I—they were not able to be here with me on my defense today because of the late notice. And basically there's—they—the daughter herself said she wanted it dismissed over the phone before I got here. And then earlier I was it [*sic*] trying to get a hold of her but she has been asleep because she stayed up all night not being able to sleep."

The juvenile court then asked minor whether she could identify "something separate and apart from [minor's] discussion with [her] dad" and the fact that she believed the victim wanted the petition dismissed, explaining that only the district attorney could dismiss the petition. The court specifically asked whether minor could identify any issues or problematic conversations with defense counsel. Minor replied, "Not specifically. But I would like a chance to have a different attorney on my behalf." The court asked her why, and minor responded, "Because I feel like it's not genuine and I feel like I was only given two options in the last court and it would have end[ed] up in the same conclusion." When the court asked her to clarify what she understood those options to be, she explained, "To go to trial but possibly end up with the same thing, or to be admitted and end up with the same thing that's going to happen after trial."

The juvenile court then asked minor if there had been any "argument" or "any kind of breakdown in communication with [defense counsel]?" Minor replied, "No, but the change in attitude was unappreciated this morning when we had a talk, me and my mom with her. And the attitude changed when we said we wanted it appealed to a higher court." The court asked whether minor wanted to share anything further about why she wanted a new attorney, and minor replied she did not.

10.

Defense counsel then responded,

"I do think some of the confusion came from having two separate charges and the amendment to one of those charges and dismissal. It's my understanding that [minor] and her mom thought that one of the cases was dismissed based on an evidentiary issue. But that's not the case. One of the cases was dismissed because she admitted in another case. So I think there was some confusion there as far as why it was dismissed. And maybe—[minor], you can stop me if you think this is wrong, but maybe they thought that one of the cases shouldn't go forward because of the dismissal. But, again, the confusion regarding why it was dismissed may be thinking there wasn't enough evidence versus it being the result of an admission. But I know the victim has made maybe some new statements. One of the reasons there was a delay in this case is I was trying to get information from the victim about their friendship, but I think my understanding is the [district attorney] spoke with her. And some of the things that were said weren't quite in line. But, regardless, [minor] and her mom did let me know this morning that they were not happy with the way that I was addressing them as far as what was going on in the case because when they told me—when [minor] said she wanted to withdraw her admission, I talked about some of the statements she made in the probation report and some of the statements she made in the past to me about the case and her involvement. And so I struggled with reconciling her saying she wasn't involved with some of the statements that she's made both after she came to court and we had talks about the case. So I was just trying to clear up the confusion that maybe may have been some of [minor's] [confusion]."

The juvenile court then asked whether defense counsel still felt that she could communicate with minor and minor's mother. Defense counsel responded,

"Yes. I just think [minor], maybe, and her mother are under the impression that I should agree with what they're saying. I don't think that's my role. My role is to review the case and tell them my honest opinion as to how this will go forward and what they may be looking at. And I think that, unfortunately, sometimes clients think that the role of an attorney is different than what it is to a defense attorney."

The juvenile court then stated it found defense counsel had "provided constitutionally sufficient representation" and denied minor's request for a new attorney. It explained,

11.

"It doesn't appear that there is any breakdown in the relationship or breakdown in communication to the extent as it would make it impossible for the attorney to properly represent [minor]. The Court will also note that I don't find any ineffective assistance of counsel.

"So the Court is going to deny the motion for a new attorney. That always, of course, you always have the right to hire your own attorney. But as to an appointed attorney, I'm going to deny the motion and will order that the transcript of this proceeding is kept confidential and is not to be released without further order of the Court. And I will let your mom and everyone back into court at this time."

The parties went back on the record following the *Marsden* hearing. Defense counsel renewed minor's request to withdraw her admission, "based on—and I did discuss this with [minor] and with [minor's] mom—but based on my review and my discussions with them, I don't have a legal reason to withdraw, but I did want to communicate her request to the Court." The juvenile court denied minor's motion to withdraw the admission, stating:

"And the Court will note that I took the admission. It's my understanding that the agreement at the time of the admission was that [minor] would admit to the amended count, which was a [section] 487[, subdivision] (c) as a felony and the … [second petition,] which was the battery on school[,] park[,] or hospital property in violation of [section] 243.2[,] would be dismissed in its entirety in light of the admission in the [amended petition]. And not hearing any reason, at least legal basis, as to why that should be withdrawn, the Court will proceed with disposition understanding that you certainly will have a right to appeal the orders that are made by the Court."

The juvenile court stated the maximum term of confinement was two years. The court ordered minor home on probation as a ward pursuant to Welfare and Institutions Code section 602. The court further ordered minor to write a three-page essay on the subject "character counts."

**B.     Law**

Admissions of guilt must be voluntary and intelligently made. (*People v. Mosby* (2004) 33 Cal.4th 353, 359 (*Mosby*), citing *Boykin v. Alabama* (1969) 395 U.S. 238, 243,

12.

fn. 5.) Advisement of rights and express waivers by defendants generally establish voluntariness and intelligence. (*Mosby*, at p. 356.) However, a defendant's prior experience with the criminal justice system is relevant to whether a waiver is knowing and intelligent. (*Id*. at p. 365.) Minors are subject to the same rights and restrictions as adults when making admissions in juvenile court. (*In re Regina N.* (1981) 117 Cal.App.3d 577, 582–583.)

Section 1018 provides: "On application of the defendant at any time before judgment …, the court may, … for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty submitted.… This section shall be liberally construed to effect these objects and to promote justice." (§ 1018.)

Good cause exists when a defendant can show that he pleaded guilty due to mistake, ignorance, inadvertence, fraud or any other factor overreaching his free and clear judgment. (*People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 797; *People v. Griffin* (1950) 100 Cal.App.2d 546, 548; *People v. Dena* (1972) 25 Cal.App.3d 1001, 1008.) The defendant bears the burden of demonstrating good cause by clear and convincing evidence. (*People v. Cruz* (1974) 12 Cal.3d 562, 566; *People v. Nance* (1991) 1 Cal.App.4th 1453 (*Nance*).) A defendant must make a strong showing of a proper ground, as the clear and convincing standard of proof indicates. (*Lillian F. v. Superior Court* (1984) 160 Cal.App.3d 314, 320 [clear and convincing evidence commands the unhesitating agreement of every reasonable mind].) "Guilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged." (*People v. Hunt* (1985) 174 Cal.App.3d 95, 103.)

"The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake." (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416 (*Breslin*), citing *In re Moser* (1993) 6 Cal.4th 342, 352.) Further, the requirement "that a plea must be intelligently made to be valid does not

13.

require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering his decision." (*People v. Knight* (1987) 194 Cal.App.3d 337, 344.) Accordingly, " '[a] plea may not be withdrawn simply because the defendant has changed his [or her] mind.' " (*Breslin*, at p. 1416, quoting *Nance*, *supra*, 1 Cal.App.4th at p. 1456.)

While section 1018, which governs the standards for withdrawal of pleas in criminal cases, is not expressly applicable to admissions in juvenile court and does not have a statutory counterpart in delinquency proceedings, the principles that underlie the statute have been imported into delinquency proceedings in other respects. (*In re Matthew N.* (2013) 216 Cal.App.4th 1412, 1420; *In re Francis W.* (1974) 42 Cal.App.3d 892, 903 [importing requirement that delinquent must personally enter plea]; *In re M.G.S.* (1968) 267 Cal.App.2d 329, 339 [same]; cf. *In re Jermaine B.* (1999) 69 Cal.App.4th 634, 640 [importing section 1192.5 with respect to plea bargains].) Accordingly, as with adult defendants, ignorance or any other factor that prevents a knowing and intelligent decision to enter a plea would be good cause to allow a minor to withdraw an admission if supported with clear and convincing evidence, a determination within the juvenile court's informed discretion after due consideration of the relevant evidence. (*Mosby*, *supra*, 33 Cal.4th at p. 359 [listing necessary advisements to guarantee knowing and intelligent decision]; *People v. Cruz* (1974) 12 Cal.3d 562, 566; *People v. Ravaux* (2006) 142 Cal.App.4th 914, 917.) Thus, "if the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to assess whether the defendant's admission … was intelligent and voluntary in light of the totality of circumstances." (*Mosby*, at p. 361.)

A reviewing court affords "considerable deference to the hearing court's factual findings." (*Nance*, *supra*, 1 Cal.App.4th at p. 1460, fn. 4.) Accordingly, in reviewing a trial court's ruling on a motion to withdraw a guilty plea, an appellate court must not

14.

disturb the trial judge's decision unless an abuse of discretion is clearly demonstrated. (*People v. Harvey* (1984) 151 Cal.App.3d 660, 666–667.)  Rather, "a reviewing court must adopt the trial court's factual findings if substantial evidence supports them." (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254; accord, *Breslin*, *supra*, 205 Cal.App.4th at p. 1416.)  Further, " '[g]uilty pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged.' " (*People v. Weaver* (2004) 118 Cal.App.4th 131, 146, quoting *People v. Hunt*, *supra*, 174 Cal.App.3d at p. 103.)

### C.    Analysis

Here, the juvenile court did not abuse its discretion when it denied minor's request to withdraw her admission.  There is sufficient evidence to support the court's reasonable inference that minor knew right from wrong on July 20, 2023, when the attack occurred, and that she made her admission knowingly and intelligently.

Minor first contends her admission was not knowingly and intelligently made because she did not understand at the time of the *Gladys R.* questioning on May 29, 2024, that the juvenile court was asking whether she knew right from wrong on July 20, 2023, the date of the attack.  She argues, rather, that she believed the court was asking whether she knew right from wrong on the date of the hearing on May 29, 2024.

In *Gladys R.*, the Supreme Court "conclude[d] that the juvenile court should consider whether a child appreciates the wrongfulness of her conduct in determining whether the child should be declared a ward under section 602 .…" (*In re Gladys R.*, *supra*, 1 Cal.3d at p. 858.)  "Courts consider the age, experience, knowledge and conduct of a minor to determine whether she understood the wrongfulness of her conduct." (*In re J.E.* (2020) 54 Cal.App.5th 309, 314.)  Further, "the court may consider 'the attendant circumstances of the crime, such as its preparation, the particular method of its

15.

commission, and its concealment.' " (*Ibid.*, quoting *In re Tony C.* (1978) 21 Cal.3d 888, 900.)

Here, during the *Gladys R.* questioning, the juvenile court expressly referred to the date of the July 20, 2023 attack when asking if minor understood the difference between right and wrong, stating:

> "[I]f you went into a store and you wanted a candy bar, *did you know back on July 20*[,] *2023*, that you had to pay for that and that it would be wrong to walk out without paying. Is that something that you understood?" (Italics added.)

After minor answered in the affirmative, the court again asked,

> "And is that something that you *understood on July 20*[,] *2023 …* ?" (Italics added.)

Minor again confirmed that, on July 20, 2023, the date of the attack, she understood taking other people's property would be wrong. The juvenile court then confirmed with defense counsel whether, after talking with minor, defense counsel was "satisfied that [minor] did understand the difference between right and wrong *on that date and time*," referring to July 20, 2023, the date of the incident. (Italics added.) Defense counsel confirmed she was. Accordingly, the record supports the court's reasonable inference based on the *Gladys R.* questioning that minor correctly understood the court was referring to July 20, 2023, the date of the incident, when it asked whether she understood the difference between right and wrong.

Minor next argues that "[g]iven [her] life-long exposure to violence and abuse, where there were apparently few or no consequences, and having been involved in certain altercations in the past where there were few if any consequences, and in consideration of well-document[ed] anxiety and panic attacks rendering [minor] crying in the fetal position on the floor, and at least some history of cutting and suicidal ideation[], it was

reasonable for [her]" to misunderstand the juvenile court's questions regarding her understanding of right and wrong during the May 29, 2024 hearing.

However, the record supports the juvenile court's reasonable inference that minor's age, experience, knowledge, and conduct show she understood the wrongfulness of her conduct at the time of the attack. (See *In re J.E.*, *supra*, 54 Cal.App.5th at p. 314.) The record shows minor was 12 years old and lived with her parents at the time of the incident. Minor's mother reported to the probation officer that before the incident, she would discipline minor by taking away her cell phone, turning off the internet, and grounding her for other incidents of misbehavior. Further, while minor argues some incidents of domestic violence that occurred in her home were not prosecuted, minor's father had two juvenile adjudications and one criminal conviction. Minor also had prior experience with the juvenile justice system in 2022, when she intentionally and knowingly violated a protective order, for which she was held accountable at the family and school level. Accordingly, the record shows it was reasonable for the court to find minor was aware of right and wrong on the date of the incident, and aware certain actions have consequences that include formal proceedings and potential criminal sentences despite her childhood experiences.

Further, the circumstances of the attack show minor understood her conduct was wrong when it occurred. The record shows minor "lured" the victim to the park under false pretenses because she knew the victim would not come if she told her the truth about the planned attack. Minor also told the probation officer that the other two juveniles involved in the attack "blackmailed" minor into luring the victim to the park, threatening to tell minor's parents and the school that she was self-harming if she did not do it. The record also shows minor chose to obey the other juveniles, rather than tell an adult that they were attempting to blackmail her. This supports the juvenile court's reasonable inference that minor knew at the time of the attack that her conduct

was wrong. Accordingly, the court did not err when it found based on the *Gladys R.* questioning that minor knew right from wrong at the time of the attack.

Minor also contends her admission was not knowing or voluntary. The People disagree.

To ensure a valid waiver of due process rights when entering into a plea agreement, our Supreme Court in *In re Tahl* held in response to the mandate of *Boykin v. Alabama*, *supra*, 395 U.S. 238 that a defendant's rights to remain silent or testify, to confront witnesses, and to a jury trial "must be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea." (*In re Tahl* (1969) 1 Cal.3d 122, 132, superseded by statute as stated in *People v. Carty* (2003) 110 Cal.App.4th 1518, 1523–1524; accord, *Mosby*, *supra*, 33 Cal.4th at p. 359.)

Minor relies on *People v. Christian* (2005) 125 Cal.App.4th 688. *Christian*, however, is inapplicable. There, the court found the trial court did not fully admonish defendant on the record of his *Boykin-Tahl* rights, including failing to advise the defendant of his right to confront witnesses and his right against self-incrimination. (*Christian*, at p. 693.)

Here, however, the record shows the juvenile court addressed each of the required *Boykin-Tahl* admonitions. The court confirmed minor understood she had the right to an "adjudication, which is a court trial in the juvenile court," "a right to see and hear witnesses testify," a right to "cross-examine witnesses," the "right to remain silent or to testify on [her] own behalf," and a right to "present [her] own evidence and [her] own witnesses at no cost to [her]." Minor stated she understood all the rights explained by the court and that she understood she would be giving up those rights if she admitted "to the amended [c]ount 1." The court confirmed minor understood that the maximum period of confinement was two years and confirmed she had received enough time to discuss her case with defense counsel. Defense counsel also confirmed minor's admission.

18.

Accordingly, the record shows the court properly admonished minor on the record of her *Boykin-Tahl* rights.

Minor further argues she did not voluntarily and intelligently make her admission, stating she told the juvenile court at the June 25, 2024 hearing that her father told her that the adjudication "would be on [her] permanent record for about 11 years," that it would impact her ability to get a job, her future, and "how others look at" her. However, minor's colloquy with the court instead reflects that she simply regretted making her admission, and the record supports the court's reasonable inference that minor believed, after speaking with her father, that withdrawing her plea and responding to renewed *Gladys R.* questioning that she did not actually understand right from wrong at the time of the incident, would lead to the dismissal of both petitions. The record further shows defense counsel explained that when minor asked about withdrawing her plea, counsel "struggled" to reconcile minor's new statements that "she wasn't involved with some of the statements that she[] made both after she came to court" and when speaking to defense counsel about her case. Defense counsel also could not offer a legal basis for minor's request to withdraw her admission. However, minor changing her mind and regretting making the admission are not grounds to withdraw her admission. (*People v. Knight*, *supra*, 194 Cal.App.3d at p. 344; see *People v. Archer* (2014) 230 Cal.App.4th 693, 702 ["The defendant may not withdraw a plea because the defendant had changed his or her mind"]; see also *Breslin*, *supra*, 205 Cal.App.4th at p. 1416.) Accordingly, the court did not abuse its discretion when it denied minor's request to withdraw her plea.

Further, minor did not suffer prejudice when the juvenile court denied her request to withdraw her admission because, as discussed above, there was no legal basis for her request to withdraw. Minor argues that defense counsel stated during the *Marsden* hearing that minor and her mother may have believed the second petition was being dismissed because of insufficient evidence, rather than because of her admission to the

amended petition.  However, nothing on the record shows minor was prevented from voluntarily entering into the plea agreement, regardless of whether she properly understood the reason for dismissing the second petition at the time she entered into the plea agreement.

As the juvenile court did not err when it found based on its *Gladys R.* questioning that minor knew right from wrong at the time of the attack on July 20, 2023, and properly informed her of the implications of her admission on her *Boykin-Tahl* rights, the court did not abuse its discretion when it denied minor's request to withdraw her admission.

## II.     FIRST AMENDMENT FREEDOM OF SPEECH

Minor next contends the probation condition requiring her to write an essay on character violates her right to free speech pursuant to the First Amendment of the United States Constitution.[6]  She argues the essay constitutes forced speech on a topic potentially inconsistent with her own values, and that although the essay may be appropriate in her case, she is nonetheless protected by the First Amendment from compelled speech " 'on the face' " of the imposition.  The People contend as a threshold issue that minor forfeited the issue below.  They further argue that, even if not forfeited, the probation condition does not violate minor's First Amendment right to free speech because it is reasonably related to her rehabilitation.  The issue was not forfeited.  However, we conclude the probation condition does not impermissibly burden minor's right to free speech because it is closely tailored to meet minor's needs and narrowly drawn to serve the purposes of rehabilitation and public safety.

---

[6]     Minor concedes the juvenile court did not abuse its discretion by ordering the probation condition requiring her to write an essay about character, as it is related to the offense and addresses concerns for her rehabilitation.

*Forfeiture*

The People contend as a threshold issue that minor forfeited the issue of whether the probation condition violates her right to free speech because defense counsel failed to raise the issue below. We disagree.

During the adjudication hearing, when the juvenile court determined the conditions of minor's probation, it gave both parties an opportunity to comment on the probation report's recommendations, including requiring minor to write an essay on character. Defense counsel did not object to the probation condition ordering her to write the essay on character.

Generally, a minor cannot challenge a probation condition on appeal that she did not object to in the juvenile court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 882, citing *People v. Welch* (1993) 5 Cal.4th 228, 234–238.) However, constitutional infirmity may be challenged for the first time on appeal where the question is strictly a matter of law. (*Sheena K.*, at p. 889.) These challenges are reviewed de novo. (*In re Malik J.* (2015) 240 Cal.App.4th 896, 901.)

Here, because minor challenges the probation condition's constitutional soundness, she did not forfeit the issue by failing to raise it below despite defense counsel not objecting to it below.

*First Amendment*

The probation condition requiring minor to write the essay on character does not impermissibly burden minor's First Amendment right to free speech, as it is closely tailored to meet minor's needs and narrowly drawn to serve the purposes of rehabilitation and public safety.

*A.     Background*

The June 25, 2024 probation report discussed minor's rehabilitation and recommendation, stating:

21.

"[Minor], 13 years [four] months of age, is making her first appearance before the Fresno County [j]uvenile [c]ourt for [d]isposition.  In the current matter, [minor] admitted to grand theft.

"Of concern to this officer [are] the circumstances of the offense. [M]inor went to [the victim's] home in the [amended petition] acting as [the victim's] friend and lured her to a place where she was then violently assaulted to the point she lost consciousness while [minor] held [the victim's] younger sister in a tight bear hug and smiled as it was happening. The victim suffered bruising and swelling to both sides of her face and left eyebrow and redness and bruising to her arm.  [M]inor was again involved in an act of violence at a school she no longer attended in which she was the aggressor.  She violently attacked [the victim] in the [second petition,] punching her with a closed fist nearly 20 times in the head and face resulting in bruising to [the victim's] left eye.  Both incidents show [minor] is not only willing to aid others in acts of violence, but she herself is willing to act violently towards others.  This behavior is not only a threat to individuals in the community but endangers [minor by] putting [her] in dangerous situations.

"[M]inor has a traumatic past[,] reporting she was sexually abused/assaulted by her grandmother's friend and had a close family friend pass away from a Fentanyl overdose.  She has cut herself in the past and has had thoughts of suicide.  She suffers from anxiety/panic attacks with most of the incidents occurring at school.  She has attended counseling for the matter and stated the counseling appears to be helping.  She has experimented with THC vape in the past but stated she stopped vaping due to wanting to pursue sports.

"To [minor's] credit, she is enrolled in school and is attending as required.  She appears to be earning passing grades and has no current disciplinary issues.  Neither she nor her mother reported any behavioral issues at home.

"In determining the appropriate recommendation, this officer considered the circumstances of the offense, [minor's] mental health, her reported trauma, and her age.  At this time, a custodial commitment does not appear warranted.  This officer believes [minor] would benefit from probation, treatment, and services such as individual counseling and anger management to address her mental health, past trauma, and her temper to hopefully eliminate any future delinquent behavior."

22.

The probation report recommended as a probation condition that minor be required to write and submit to her "[p]robation [o]fficer a three[-]page essay on the [s]ubject of [c]haracter [c]ounts."

At the disposition hearing, the juvenile court asked whether either party had any "additions or corrections." Defense counsel requested the court impose fewer community service hours than probation recommended. The court reduced minor's community service hours from 40 hours to 30 hours. Defense counsel also requested the court to allow minor "peaceful contact" with the victim, which the court denied.

The juvenile court also ordered minor to write an essay on character as one of her probation conditions as recommended in the probation report. Defense counsel did not object.

### B.   Law

"Probation is a privilege and not a right. [Citation.] Because probation conditions foster rehabilitation and protect the public safety, they may infringe the constitutional rights of the defendant, who is 'not entitled to the same degree of constitutional protection as other citizens.' " (*People v. Jungers* (2005) 127 Cal.App.4th 698, 703.)

"The permissible scope of discretion in formulating terms of juvenile probation is even greater than that allowed for adults. '[E]ven where there is an invasion of protected freedoms "the power of the state to control the conduct of children reaches beyond the scope of its authority over adults ...." ' [Citation.] This is because juveniles are deemed to be 'more in need of guidance and supervision than adults, and because a minor's rights are more circumscribed.' [Citation.] Thus, ' " 'a condition of probation that would be unconstitutional or otherwise improper for an adult probationer may be permissible for a minor under the supervision of the juvenile court.' " ' " (*In re Victor L.* (2010) 182 Cal.App.4th 902, 910.)

23.

A probation condition may limit a minor's constitutional rights provided it is narrowly drawn to serve the purposes of rehabilitation and public safety and is closely tailored to meet the juvenile's needs.  (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890; *In re Tyrell J.* (1994) 8 Cal.4th 68, 81–82, overruled on other grounds by *In re Jaime P.* (2006) 40 Cal.4th 128, 139; *In re Babak S.* (1993) 18 Cal.App.4th 1077, 1084.)  " 'For example, while a travel restriction may be proper for a minor who lives outside the gang's territory, it may be overbroad for one who lives, works or goes to school within the area.  But the court alone is empowered to determine the propriety of the proposed conditions and their applicability to the individual offender.' "  (*In re Antonio R.* (2000) 78 Cal.App.4th 937, 941, italics omitted, quoting *In re Pedro Q.* (1989) 209 Cal.App.3d 1368, 1373.)

We review "constitutional challenges to probation conditions de novo."  (*People v. Holzmann* (2018) 18 Cal.App.5th 1241, 1244.)

### C. *Analysis*

Here, the probation condition requiring minor to write a "character counts" essay does not impermissibly burden her First Amendment right to free speech because it is narrowly drawn to serve the purposes of rehabilitation and public safety and is closely tailored to meet minor's needs.

The probation report recommended minor be required to write a "character counts" essay as a condition of her probation, based on her willingness to lure the victim to a violent assault and hold back the victim's younger sister while smiling and watching and minor's attack on someone on a different day by going to a school minor did not attend and violently attacking the victim by punching her in the face nearly 20 times.  It explained, "Both incidents show [minor] is not only willing to aid others in acts of violence but she herself is willing to act violently towards others.  This behavior is not only a threat to individuals in the community but endangers [minor by] putting [her] in dangerous situations."  However, it also noted minor had suffered sexual abuse and

assault, and had a history of mental health struggles and self-harm but was going to counseling to help improve her mental health.

Minor argues that requiring her to write an essay about character violates her right to be protected from compelled speech. Minor concedes, however, there is little precedent on the issue. She argues "[t]here exists one case where competing constitutional protections were at issue, and the [United States] Supreme Court favored the protection of one organization against compelled speech over another organization's protection (albeit a Massachusetts's state protection) against sexual orientation discrimination," citing *Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston, Inc.* (1995) 515 U.S. 557, 557–558. She concedes there is a distinction between a civil rights matter and delinquency proceedings, but argues the "character counts" essay probation condition "does not concern [minor's] safety or the public safety per se." She further concedes that one of the stated purposes of juvenile law is rehabilitation, but argues that compelling her speech by requiring her to write the essay "might be contrary to her rehabilitation into a concerned individual, and that to honor her constitutional protections might in fact more greatly further that purpose."

We disagree. Public safety was endangered by minor's conduct, as she deceived and attacked another juvenile in the underlying offenses, and requiring minor to write an essay on character is not contrary to her rehabilitation needs, as it will require her to think critically about character.

Further, writing the "character counts" essay as a probation condition is closely tailored to meeting minor's needs, as it requires her to focus on character, including that she should neither deceive nor violently attack people. It is also narrowly drawn to serve the purposes of rehabilitation and public safety because, while it will require minor to think critically about her character, it does not compel her to say anything specific on the topic.

25.

As the probation condition requiring minor to write an essay on character is closely tailored to meet minor's needs and narrowly drawn to serve the purposes of rehabilitation and public safety, her right to free speech has not "been impermissibly burdened."  (See *In re Antonio R.*, *supra*, 78 Cal.App.4th at p. 942.)

## DISPOSITION

The disposition order is affirmed.